Lawrence J. CORMIER, Plaintiff,

v.

ROWAN DRILLING COMPANY et al.,
Defendants-Appellants,

v.

CONTINENTAL OIL COMPANY,
Defendant-Appellee.

No. 75–3875.

United States Court of Appeals,
Fifth Circuit.

March 30, 1977.

---

Lawrence J. Ernst, New Orleans, La., for defendants-appellants.

Christopher Tompkins, New Orleans, La., for defendant-appellee.

Ralph S. Johnson, George F. Riess, New Orleans, La., for Ins. Co. of North America.

Before BROWN, Chief Judge, and HILL and FAY, Circuit Judges.

JOHN R. BROWN, Chief Judge:

In this appeal,[1] Rowan Drilling Company (Rowan) appeals from the District Court's ruling that Rowan must indemnify its co-defendant Continental Oil Company

---

1. Initially, Rowan also appealed from the jury verdict and judgment finding Rowan liable for

the injuries caused Plaintiff-Appellee, Cormier, when Cormier fell from a "widowmaker" and

(Continental), for damages and costs of defense Continental was required to bear in a suit for injuries brought by Plaintiff below, Lawrence J. Cormier. We find no reversible error and affirm.

### In The Beginning

Lawrence J. Cormier was employed by Dresser-Atlas Industries[2] as a wire line operator. He was sent by his employer to Continental's X-platform located in the Gulf of Mexico in West Delta Block 95, approximately 35 miles off of Grand Isle, Louisiana. Rowan was engaged in drilling operations under contract for Continental on this platform at the time. This contract prescribed the Contractor's (Rowan) obligations,[3] and elaborate mutual indemnity pro-

---

injured his left leg. In that appeal, Rowan argued that the evidence was insufficient to support a finding that Rowan was negligent and that Cormier was contributorily negligent by only 10% and that the jury's award in favor of Cormier was excessive. Rowan also argued that the trial court committed reversible error (i) in the manner in which the damages issue was presented to the jury; (ii) in permitting the jury to take the jury charges and instructions into the jury room; (iii) in failing to correct the jurors' copy of the instructions; (iv) in failing to exclude one of plaintiff's expert witnesses from testifying; (v) in failing to admit some of defendant's impeachment photographs into evidence; (vi) in receiving into evidence some of plaintiff's photographs; (vii) in failing to permit a demonstration by defense counsel in his closing argument; and (viii) in causing unnecessary and prejudicial interruptions of the trial.

After oral argument was heard on these consolidated appeals, counsel for Cormier and Rowan submitted a joint motion partially to dismiss the appeal, on the ground that the parties had settled the controversy. The motion fully reserved, however, Rowan's rights on appeal against Continental on the cross-claim for indemnity. This Court having granted Cormier's and Rowan's motion partially to dismiss the appeal between them, with prejudice, the jury verdict below and the issues raised by the parties concerning that verdict need not concern us longer. However, to render understandable our disposition of Rowan's appeal against Continental, the opinion fully sets forth the facts surrounding Cormier's accident and the jury trial, in addition to the facts more directly applicable to the indemnity cross-claim.

2. What adds to the fact that these are often not what they appear to be (see, e. g., Fenner v. Continental Diving Service, Inc., 5 Cir., 1976, 543 F 2d 1113), Dresser under its contract of indemnity to Continental undertook in its name the defense of the claim against Continental.

3. Rowan agreed to be subject to the following obligations:

2. To examine, before using, all material, equipment, and supplies furnished by Com-

pany for the drilling operations herein undertaken and report to Company any defects therein in time to allow Company to replace same without delaying drilling operations, and to assume all risk and responsibility for any mishap, damage, or loss caused by defects not called to the attention of Company, except in instances of latent defects and where Contractor is relieved from responsibility under the terms of this contract. Contractor agrees to account for and maintain the material, equipment and supplies furnished by Company in the condition received, usual wear and tear resulting from normal use expected.

4. To keep Contractor's equipment in condition at all times to perform at maximum efficiency.

7. To exercise due care and caution in the prevention of fires, explosions, blowouts, and to perform any operations necessary to protect life and property. Contractor, in performing operations to protect life and property and prevent a blowout, shall be paid and reimbursed on the basis as herein provided for drilling operations, and it is expressly agreed that Contractor shall perform the work hereunder, or, at Company's direction, in cooperation with other contractors who may be engaged by Company to assist.

13. To operate and maintain all safety devices, emergency equipment, aids-to-navigation and related equipment situated on the mobile unit, platform or tender used in connection with the drilling operations herein undertaken to meet or exceed Company safety practices and policies set forth in CAGC Marine Region Safety Manual, and in a manner to comply with all applicable Coast Guard Regulations. Contractor shall, at Contractor's cost and expense, repair or replace any such equipment furnished by Company which is damaged or lost, except as a result of force majeure, during the time operations are being performed hereunder. Company shall reimburse Contractor for any third party maintenance costs, due to normal wear and tear, on such equipment furnished by Company.

visions [4] running in favor of each with respect to injury or death claims by the employees of Rowan or Continental against the other, the obvious purpose being to make each responsible for its employees no matter how much the law or the facts might generate a Tinker-to-Evers-to-Chance Donnybrook. *See Kessler v. Pennsylvania National Mutual Casualty Insurance Co.,* 5 Cir., 1976, 531 F.2d 248.

Rowan was drilling with its rig number 11, a skid type of rig. This rig operated upon the deck of the fixed oil platform owned by Continental. The drilling operations were supported by Rowan's tender "JACK CLEVERLY". The sole means of ingress and egress for material, equipment and personnel between the vessel and the platform was by means of a ramp known and now juridically memorialized as the "widowmaker." This was a smooth metal ramp with steps constructed on one side, for personnel. It was permanently affixed to the oil platform, but, because of the move-

---

4. Continental's indemnification agreement provided:

INDEMNITY

A. Company [Continental] agrees to indemnify and hold harmless Contractor, and any or all vessels, craft, agents, directors, officers, employees or servants of Contractor, against any and all claims, demands or suits (including, but not limited to claims, demands, or suits for bodily injury, illness, disease, death, or loss of services, property or wages) which may be brought against Contractor or in which Contractor is named a party defendant or in which any or all such agents, directors, officers, employees, or servants of Contractor are named party defendant or parties defendant, as the case may be, by any employee of Company, or by any employee of the co-lessees of Company who wholly or partially bear the cost of operations hereunder, or the legal representative or successor of such employee, in any wise arising out of or incident to the work to be performed under this contract, irrespective of whether such suits are based on the relationship of master and servant, third party or otherwise and even though occasioned, brought about, or caused in whole or in part by the negligence of Contractor, its agents, directors, officers, employees, servants or subcontractors or the agents, employees, directors, officers, or servants of said subcontractors, or by the unseaworthiness of vessels or craft. Company further agrees to investigate, handle, respond to, provide defense for and defend any such claim, demand or suit at its sole expense and agrees to bear all other costs and expenses related thereto, even if it is groundless, false, or fraudulent; but Company may make such investigation, negotiation and settlement of any such claim, demand, or suit as it deems expedient.

Rowan's indemnification agreement provided:

B. Contractor [Rowan] agrees to indemnify and hold harmless Company, and any or all co-lessees of Company who wholly or partially bear the cost of operations hereunder, and any or all vessels, craft, agents, directors, officers, employees, or servants of Company or of such co-lessees, against any and all claims, demands, or suits (including, but not limited to, claims, demands, or suits for bodily injury, illness, disease, death, or loss of services, property or wages) which may be brought against Company or against Company and such co-lessees, whether one or more, or in which Company or such co-lessees, whether one or more, or in which any and all such agents, directors, officers, employees, or servants of Company or of such co-lessees may be named party defendant or parties defendant, as the case may be, by any employee of Contractor, or the legal representative or successor of such employee, in any wise arising out of or incident to the work to be performed under this contract, irrespective of whether such suits are based on the relationship of master and servant, third party or otherwise and even though occasioned, brought about, or caused in whole or in part by the negligence of Company, its agents, directors, officers, employees, servants, or subcontractors, or the agents, employees, directors, officers, or servants of said subcontractors, or by the negligence of the said co-lessees of Company, their agents, directors, officers, employees, servants or subcontractors, or the agents, employees, directors, officers, or servants of said subcontractors or by the unseaworthiness of vessel or craft. By way of illustration, but not by way of limitation, any person who is on Contractor's payroll and receives, has received, or is entitled to receive payment from Contractor in connection with the work performed hereunder shall be the employee of Contractor, even though Company reimburses Contractor the amount paid such employee. Contractor further agrees to investigate, handle, respond to, provide defense for and defend any such claim, demand, or suit at its sole expense and agrees to bear all other costs and expenses related thereto, even if it is groundless, false, or fraudulent; but Contractor may make such investigation, negotiation and settlement of any such claim, demand, or suit as it deems expedient.

ment of the drilling tender in the water, it could not be affixed to the tender. Therefore, the ramp extended from the platform out over the water and over the deck of the drilling tender. Standing on the deck of the drilling tender was a ramp and small platform similar to those still sometimes used to board commercial aircraft. One wishing to leave the oil platform and board the drilling tender had to walk down the steep ramp of the widowmaker until he reached its bottom step, which was no wider than any of the other steps. Then, waiting until the tender was either at the very top or very bottom of its movement up and down in the water, he would leap across the gap of two or three feet separating him from the drilling tender platform and ramp. The ramp presumably was labeled the widowmaker by the heirs, friends and co-workers of those who did not land safely or at all. One wishing to board the drilling platform from the drilling tender, simply performed the same operation in reverse.

On June 16, 1973, Cormier was descending the ramp and in the process of making the transfer from the widowmaker to the platform on the drilling tender, he fell to the deck of the tender, and severely injured his left leg.

### Litigation Sets In

As a result of the fall, Cormier brought suit against Rowan and Continental, alleging that they negligently allowed the steps on the ramp to become bent, covered with grease, mud and oil and missing a section of hand railing at the end of the ramp. He further claimed that they were negligent in having poor lighting and in failing to provide a safety net beneath the end of the ramp. Finally, he claimed that the defendants were negligent in failing to place a walkway between the end of the ramp and the small platform on the deck of the tender. Continental cross-claimed against Rowan for indemnity for any damages that it might incur and for attorney's fees and other costs of defending this suit.

### The Trial

At trial, both plaintiff and defendants put on a variety of witnesses. Three eyewitnesses testified that plaintiff appeared to be day dreaming when he fell.[5] Others testified that the steps were bent and covered with grease and mud. In an attempt to prove to the jury that it was impossible to slip on the steps of the widowmaker even if they were covered with grease, defendant Rowan attempted to get the court to allow him to conduct a courtroom experiment, whereby he would bring a step from a widowmaker into the courtroom, dip it in oil, stand on it and jump from it. Upon objection from Cormier, the Judge refused to allow this demonstration to take place, on the ground that the demonstration would be misleading, since field conditions could not possibly be duplicated.

Utilizing, as we so often urge,[6] the remarkable doubt eliminator, the Judge sent the case to the jury on special interrogatories[7] on both liability and damages, so that we see what might well have been obscured

---

5. At least one of these three witnesses testified that he could not see the lower half of plaintiff's body as he was coming down the steps, so that he could not tell whether he slipped or not. Another testified that he could not tell whether or not plaintiff slipped or simply walked off the end of the ramp because of the poor lighting conditions.

6. *See* J. Brown, *Federal Special Verdicts: The Doubt Eliminator*, 5 Cir., 44 F.R.D. 338 (1968); *see also In re Double D. Dredging Co.*, 5 Cir., 1972, 467 F.2d 468, 469, n. 3.

7. The special interrogatories and answers on the liability count were as follows:

```
    1.  "Was Rowan Drilling Company negligent under
the General Maritime Law for failing to provide a safe
method of ingress and egress between the platform and
the Drill Tender Jack Cleverly in a manner that
proximately caused Mr. Cormier's injury?"              Yes

    2.  "Was Continental negligent in a manner that
proximately caused Mr. Cormier's injuries?"            No
```

by an enigma-wrapped-in-a-mystery general verdict. In addition, after reading the jury charge to the jury, he sent the written charge and instructions into the jury room with the jury. Upon being informed by counsel for the defendants that there was a minor typographical error in one of the written instructions, the trial judge orally corrected the instruction to the jury immediately before the jury retired.[8]

```
        3.  "Was Mr. Cormier contributorily negligent in a
manner that was a proximate cause of his injuries?"          Yes

        "If you answered Yes, to what extent did his
negligence contribute to his injury (express in
percent)?"                                                   10%

        The special interrogatories on the damages issue
were as follows:

        1.  What is the total amount of damages that will
fairly compensate Mr. Cormier for all losses he has
suffered to date, if any, as a result of the injury?"       $50,000

        2.  What is the total loss Mr. Cormier will suffer
in the future as a result of his injury, if any, other
than loss of future wages?"                                  $100,000

        3.  "What amount of wages, if any, will Mr.          $10,000 per
Cormier lose in the future?"                                 year for
                                                             46 years

        Or

        "If you arrive at your answer in some other way
state the amount in the manner that you use to reach
it."                                                         The jury
                                                             left blank

        4.  By what rate should this amount be adjusted
(or discounted) to reach its present value?"                 5%

        5.  "By what rate, if any, should this amount be
adjusted to take into account future changes as a
result of changes in productivity, inflation,
deflation?"                                                  2%
```

---

8. As written, the jury charge on comparative negligence, which the jury took into the jury room with them, contained this paragraph:

"If you find as a matter of fact that the plaintiff was where he was required, ordered, or supposed to be doing, he cannot be found by you to be contributorily negligent or to have assumed any risks."

After the Judge read the jury instructions to the jury, he asked the parties if they had any further matters before the jury went into the jury room to deliberate. At that time, defendants raised an objection to the wording of the paragraph quoted above, so the Court gave the following explanation to the jury (as requested by the defendant) *as the last charge made to the jury before they retired:*

Ladies and gentlemen, I have told you that if a person is doing what he is supposed to do or ordered to do, he is not contributorily negligent.

Obviously, you must use your good judgment and the rest of the charge in applying that. If a person is doing what he is supposed to be doing but does it carelessly and if doing it carelessly is his own fault, that would be contributory negligence. In other words, if a person who is engaged in an employment offshore does not have the choice of how he will do work, he can't choose a number of ways to go to work, or a number of methods of doing work, he must accept what is provided to him.

The jury returned a verdict in favor of Cormier and against Rowan based on negligence, and in favor of Continental, finding no negligence on its part. *See* note 7, *supra.* Continental's cross-claim against Rowan was tried to the Court, which found in favor of Continental and awarded Continental attorney's fees in the amount of $2,925, the amount stipulated as reasonable between the parties.

### The Indemnity Award

Having at the jury's hands lost on the big judgment to Cormier, Rowan contends that the trial court, without a jury, erred in ruling that Rowan had an obligation to indemnify Continental for attorney's fees and costs incurred by Continental. After recognizing that there was no express indemnity agreement for cost of defense in the contract between the parties, the Court found Rowan liable to indemnify Continental, for a variety of reasons. However, none of these justifications could have been reached by the Court but for its threshold conclusion that the reciprocal indemnity provision between the parties "doesn't reach this suit." Therefore, before we may proceed to the arguments presented in justification of the District Court's ruling, we must determine whether the reciprocal indemnity provisions reach this suit.

Both Dresser (Cormier's employer) and Rowan were independent contractors. In the Continental-Rowan contract there were reciprocal indemnity provisions. In Continental's portion of the reciprocal indemnity provision (*see* note 4, *supra* ) Continental expressly agreed to

> "indemnify and hold harmless Contractor [Rowan] and any or all vessels, craft, agents, directors, officers, employees or servants of Contractor, against *any and all* claims, demands or suits (including,

but not limited to claims, demands, or suits for bodily injury, illness, disease, death, or loss of services, property or wages) which may be brought against Contractor or in which Contractor is named a party defendant . . . *by any employee of [Continental],* . . . in any wise arising out of or incident to the work to be performed under this contract, *irrespective of* whether such suits are based on the relationship of master and servant, third party or otherwise *and even though occasioned,* brought about, or caused *in whole or in part by the negligence of Contractor,* its agents, directors, officers, employees, servants or subcontractors . . . or by the unseaworthiness of vessels or craft. Company further agrees to investigate, handle, respond to, provide defense for, and defend any such claim, demand or suit *at its sole expense* and agrees to bear all other costs and expenses related thereto, even if it is groundless, false or fraudulent. . . ." [Emphasis supplied].

Rowan, in its half of the reciprocal indemnity provision (*see* note 4, *supra* ) undertook precisely the same obligation towards Continental that Continental took *vis-a-vis* Rowan. However, Rowan's half of the agreement contained the following additional provision:

> "By way of illustration, but not by way of limitation, any person who is on Contractor's payroll and receives, has received, or is entitled to receive payment from Contractor in connection with the work performed hereunder shall be the employee of Contractor, even though Company reimburses Contractor the amount paid such employee."

■ The whole purpose behind these provisions is to make sure that the contractor (Rowan) and the company (Continental) are

---

So, if you do find that what was provided to him was unsafe, you may not hold him at fault for using it.

If, on the other hand, he was provided with a safe way to go to the drill tender and he him-

self, through his own negligence, failed to use it safely, then that would be negligence on his part.

each solely responsible for anything that happens to their own respective employees, regardless of fault. In the most specific detail, which writes over or around any possible tort or maritime theory by which liability could be palmed off on the other, the contracts identify precisely the respective indemnity obligations between the parties to the contract with respect to the employees of each. Thus, the waiver of indemnity between the two parties so far as it goes is complete without regard to the negligence of either party, the unseaworthiness of any vessel or the breach of underlying contractual obligations.

But precise as it is as between Rowan and Continental respecting a claim by their respective employees, it prescribes nothing as to claims by third parties or the employee of a third party.

This carefully drawn, commonly used contractual provision reflects a practical, efficient agreement by parties faced with sharing, apportioning or underwriting the economic risks of offshore drilling. It is a means by which unnecessary insurance costs are avoided, the ultimate bearer being the owner for whom others contract.

The reciprocal indemnity provisions between Continental and Rowan avoids this doubling of costs to the owner, Continental. Thus, the reciprocal indemnity provision requires each party to carry adequate self-insurance and results in a dove-tailed, highly integrated insurance program, the practical effect of which is to impose on each (and their insurers) the sole and ultimate loss arising out of injury to the respective employees of each. This inures to the benefit of all involved, since it cuts out needless insurance costs (which are undoubtedly passed along to the final consumer at some point). Also, to the extent that it clearly defines the respective indemnity obligations of both parties, it cuts down on unnecessary litigation costs.

■ Under these circumstances, if we find that Cormier was, within the meaning of the contract, an employee of Continental, we must find that Continental may not receive indemnity from Rowan. On the other hand, if Cormier is an employee of Rowan, Rowan must indemnify Continental. Only if we find that the express reciprocal indemnity provision is inapplicable in this case may we turn to theories of implied indemnities, general maritime law, general principles of major-minor fault, or the like. To turn to these principles prematurely, before we have determined that the contractual provision is inapplicable, would be to override the parties' contract. They have the absolute right to prescribe their respective indemnity obligations, and if we find that the contract is applicable to the facts of this case, we must apply it.

■ The District Court, as an afterthought in its denial of Rowan's motion for new trial, remarked that "Rowan Drilling does not challenge the court's conclusion that Mr. Cormier was a borrowed servant of Rowan Drilling, so that the indemnity provisions of its contract with Continental Oil became operative." We conclude that this cannot stand. In fact, the evidence developed during this trial indicates that if Cormier was a "borrowed servant" of anybody, it was of Continental. Dresser, Cormier's employer, was an independent contractor engaged by Continental. Dresser sent a full crew out to Continental's platform and its employees worked under Dresser's immediate (and Continental's ultimate) supervision, not under Rowan's supervision.

■ Neither can we conclude with respect to the reciprocal indemnity agreement vis-a-vis Rowan-Continental that Cormier was an employee of Continental. To whatever extent pertinent, the blanket contract between Continental and Dresser provides that "any person who is on Contractor's [Dresser's] payroll and receives, has received, or is entitled to receive payment from Contractor in connection with the work performed or to be performed hereunder shall be the employee of Contractor, even though Company reimburses Contractor the amount paid such employee." And there is no indication in fact that Cormier was an employee of Continental or that the

 

reciprocal indemnity agreement included within Continental's employees the employees of its contractors or subcontractors.

Because this express, highly specific reciprocal indemnity provision is not applicable to the case at hand, we must now apply the general, non-contractual law to determine whether Rowan is liable to indemnify Continental for attorney's fees and costs.

In this case, Continental, without any fault of its own, was required to pay attorney's fees and court costs of defending this suit, despite its request prior to trial that Rowan assume Continental's defense. If a basis for indemnity exists, Continental is entitled to indemnification for attorney's fees and costs.[9]  *See,. e. g., Kelloch v. S & H Subwater Salvage, Inc.,* 5 Cir., 1973, 473 F.2d 767; *Dow Chemical Company v. Barge UM-23B,* 5 Cir., 1970, 424 F.2d 307; *Patterson v. Humble Oil & Refining Company,* 5 Cir., 1970, 423 F.2d 883.

In *Tri-State Oil Tool Industries, Inc. v. Delta Marine Drilling Company,* 5 Cir., 1969, 410 F.2d 178, we held that, in an action for indemnity between two tort feasors, "the party which is actively negligent should bear the consequences of its wrong and is responsible for the damages incurred. Accordingly, it should indemnify the party which is only vicariously or secondarily wrong, for any damages the latter has been compelled to pay." *Id.,* at 178–79. This principle has been consistently followed in this Circuit. *See, e. g., Magnum Marine v. Kenosha Auto Transport Corp.,* 5 Cir., 1973, 481 F.2d 933; *Acme Boat Rentals, Inc. v. J. Ray McDermott & Company,* 5 Cir., 1970, 424 F.2d 393; *Humble Oil & Refining Company v. Naquin,* 5 Cir., 1969, 414 F.2d 912; *General Electric Company v. Cuban American Nickel Company.* 5 Cir., 1968, 396 F.2d 89.

In this case, the contract between the parties places a duty upon Rowan to keep its equipment in good order. The jury's verdict indicates conclusively that Rowan failed to carry out this duty by negligently failing to maintain a safe means of ingress and egress aboard the barge. By the jury's verdict, as between the two defendants, only Rowan was negligent. Continental was completely absolved of any negligence. Under these circumstances, we conclude that, without putting our decision on the basis of a breach of the contractual obligation to keep its equipment in order, the doctrine announced in *Tri-State* controls. Under that principle, Rowan is liable to indemnify Continental for the amount stipulated by the parties to be Continental's attorney's fees and court costs.

AFFIRMED.

---

9. "As a necessary part of his damages an indemnitee may recover against his indemnitor interest and his expenses, or necessary defensive fees and expenses * * *."

"As a general rule, and unless the indemnity contract provides otherwise, an indemnitee is entitled to recover, as part of the damages, reasonable attorneys' fees." 41 Am.Jur.2d, *Indemnity,* § 36, 725–26. *See also* cases cited in *Id.,* at 726 n. 10.