**Curtis Lee TERRY**

v.

**REBSTOCK DRILLING CO., et al.**

**Civ. A. No. 84–722.**

United States District Court,
E.D. Louisiana.

Jan. 29, 1985.

James A. Wysocki, Kevin R. Tully, New Orleans, La., for plaintiff.

Felicien P. Lozes, John F. Colowich, New Orleans, La., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

BEER, District Judge.

To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such, and to the extent that any of the following conclusions of law constitute findings of facts, they are so adopted.

### Findings of Fact

1. In April, 1983, the Par Exploration Company contracted with Rebstock Drilling Company to drill a well in Lake Verrett, Assumption Parish, Louisiana. Rebstock Drilling Barge No. 4 was used in the drilling operation. At some point before August 19, 1983, Enserch Exploration Co. assumed the contract from Par Exploration Co. (Exhibit D–8). During the course of

the drilling, Enserch hired Eastman Whipstock, Inc., to perform directional drilling services.

2. As is the customary practice, Eastman Whipstock as directional driller was authorized by Enserch to do whatever wirelining was necessary. Eastman Whipstock hired New Orleans Wireline, Inc. to perform those services. Those services were billed through Eastman Whipstock to Enserch. (Invoice No. 40908, exhibit D–9; Deposition of Enserch Regional Drilling Manager Jack Sledge, pp. 13–14, 23, 27.)

3. On or about August 19, 1983, plaintiff Curtis Lee Terry was employed as a wireline operator for New Orleans Wireline, Inc., and was assigned to work on board Rebstock Drilling Barge No. 4.

4. As is the normal procedure, mud was spilled out of the drilling hole onto the rig floor as the drilling tools and wireline were being withdrawn from the hole. Rebstock would periodically clean the floor of the rig by hosing it off.

5. The plaintiff was allegedly injured when he slipped in mud as he was attempting to cross the rig floor.

6. The parties have stipulated that Highlands Insurance Company, as insurer of New Orleans Wireline, had paid the plaintiff's medical bills, totalling $10,230.23, and weekly benefits at $131.18 per week, totalling $8,526.70 at the time of trial. Thus, the total benefits paid at the time of trial was $18,756.93. The parties further stipulated that the weekly benefit payments are ongoing. (Record, No. 55.)

7. Plaintiff filed suit against Rebstock for his injuries. Highlands intervened for recovery of the compensation payments it has made to plaintiff. Rebstock filed a cross-claim against Highlands, as the liability insurer of New Orleans Wireline, Inc. Rebstock filed a third-party claim against Enserch for contractual indemnity. Enserch filed a third-party claim against Eastman Whipstock, which was severed.

8. In the drilling contract between Enserch and Rebstock there were provisions for indemnification, which read as follows:

18.10 *Contractor's Indemnification of Operator.* Contractor agrees to protect, defend, indemnify, and save Operator, its officers, directors, employees and joint owners harmless from and against all claims, demands, and causes of action of every kind and character, without limit and without regard to the cause or causes thereof or the negligence of any party or parties arising in connection herewith in favor of Contractor's employees or Contractor's subcontractors or their employees, or Contractor's invitees on account of bodily injury, death or damage to property. If it is judicially determined that the monetary limits of insurance required hereunder or of the indemnities voluntarily and mutually assumed under paragraph 18.10 (which Contractor and Operator hereby agree will be supported either by available liability insurance, under which the insurer has no right of subrogation against the indemnitees, or voluntarily self-insured, in part or whole) exceed the maximum limits permitted under applicable law, It is agreed that said insurance requirements or indemnities shall automatically be amended to conform to the maximum monetary limits permitted under such law.

18.11 *Operator's indemnification of Contractor.* Operator agrees to protect, defend, indemnify, and save Contractor, its officers, directors, employees and joint owners harmless from and against all claims, demands, and causes of action of every kind and character without limit and without regard to the cause or causes thereof or the negligence of any party or parties arising in connection herewith in favor of Operator's employees or Operator's contractors or their employees, or Operator's invitees other than those parties identified in paragraph 18.10 on account of bodily injury, death or damage to property. If it is judicially determined that the monetary limits of insurance required hereunder or of the indemnities voluntarily and mutually assumed under paragraph 18.11 (which Contractor and Operator hereby agree will be supported either by available liability insur-

ance, under which the insurer has no right of subrogation against the indemnitee, or voluntarily self-insured, in part or whole) exceed the maximum limits permitted under applicable law. It is agreed that said insurance requirements or indemnities shall automatically be amended to conform to the maximum monetary limits permitted under such law.

9. As defined in those provisions, plaintiff was an invitee of the operator of the well, Enserch. Terry was an employee of a subcontractor of Enserch. Directional drilling operations necessarily involve wirelining, and Enserch must reasonably have expected that by hiring Eastman Whipstock to perform directional drilling operations it was agreeing to pay for wireline services as well. The plaintiff was not an invitee of Rebstock.

10. All of the parties except the plaintiff have stipulated, and I find, that the plaintiff was not a seaman.

11. The plaintiff's alleged injuries were the result of his exposure to a normal hazard with this kind of activity, and were not the result of the negligence of any party.

12. The plaintiff settled his claim against Rebstock for $125,000 on the day of trial, with Rebstock agreeing to fund $62,500 and Enserch agreeing to fund $62,500 of that amount. Trial proceeded on the third-party claim, the cross-claim, and the intervention.

### Conclusions of Law

■ 1. As the plaintiff was not a seaman, his sole remedy against his employer is in worker's compensation under the provisions of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 901 et seq. *Buras v. Commercial Testing & Engineering Co.*, 736 F.2d 307 (5th Cir.1984); *Pippen v. Shell Oil Co.*, 661 F.2d 378 (5th Cir.1981). Similarly, Section 905(b) of the Act cuts off the right of the vessel owner to recover contribution or indemnity from the employer. *Scindia Steam Navigation v. DeLos Santos*, 451 U.S. 156, 101 S.Ct. 1614, 68 L.Ed.2d 1 (1981); 33 U.S.C. § 905(b). Therefore, Rebstock may not recover against Highlands Insurance Co., the insurer of the plaintiff's employer.

■ 2. Highlands Insurance Company has a lien on the plaintiff's recovery in the amount of the compensation it had paid to plaintiff at the time of the trial, which was $18,756.93. *Davillier v. Cavn Venezuelan Line*, 407 F.Supp. 1234 (E.D.La.1976); *Bloomer v. Liberty Mutual Insurance Co.*, 445 U.S. 74, 100 S.Ct. 925, 63 L.Ed.2d 215 (1980).

■ 3. The Louisiana Anti-Indemnity Statute, La.R.S. 9:2780, does not nullify the indemnity provisions found in Sections 18.10 and 18.11 of the drilling contract. Because this contract and its indemnity provisions pertain to maritime employment, the contract is maritime in nature and its construction is controlled by admiralty law. *Boudreaux v. American Workover, Inc.*, 664 F.2d 463, 466 (5th Cir.1981); *Pippen v. Shell Oil Co.*, 661 F.2d 378, 384 (5th Cir. 1981); *Porche v. Gulf Mississippi Marine Corp.*, 390 F.Supp. 624 (E.D.La.1975). *See also,* Note, *Contractual Indemnity Under Maritime and Louisiana Law*, 43 La.L. Rev. 189 (1982).

■ 4. The most reasonable interpretation of the indemnity clauses of the drilling contract is that Rebstock and Enserch agreed to indemnify each other for damages due to the injuries suffered by each party's own direct or indirect employees or invitees; Rebstock would indemnify Enserch for the damage claims of Rebstock's own direct or indirect employees or invitees, and Enserch would indemnify Rebstock for the damage claims of Enserch's own direct or indirect employees or invitees. If a person was an invitee of both the operator and the contractor, Articles 18.10 and 18.11 would place responsibility for that person's injuries on the contractor, Rebstock. However, I have found that plaintiff was an invitee of Enserch and not Rebstock. As I have found that neither Rebstock nor Enserch was negligent, I will not consider whether the contract provi-

sions were sufficiently clear to protect each indemnitee against the consequences of his own negligence, under *Corbitt v. Diamond M Drilling Co.*, 654 F.2d 329 (5th Cir.1981).

■ 5. Under the terms of the indemnity provision, Enserch agreed to "protect, defend and, indemnify, and save" Rebstock from and against the claim of Curtis Lee Terry, an invitee of Enserch. Accordingly, Enserch must indemnify Rebstock for its $62,500 share of the settlement. *Cf., Cormier v. Rowan Drilling Co.*, 549 F.2d 963 (5th Cir.1977).[1] In *Cormier,* the agreement to indemnify was limited only to the direct employees of the parties to the indemnification agreement. The Court observed that there was no indication that the reciprocal indemnity agreement included within the well operator's employees the employees of its contractors or subcontractors. *Id.* at 970–71.

■ 6. The lien of Highlands Insurance Company for recovery of medical bills and benefits in the amount of $18,756.93 paid to the plaintiff will be deducted from the settlement funds the defendants have agreed to pay to the plaintiff.

Counsel for plaintiff and counsel for intervenors are directed to prepare a judgment according to these findings.

---

1. Even so, I do not include, by implication or otherwise, an award for costs of defense. The matter was sufficiently at issue for Rebstock to be responsible for its own legal fees and costs.