STOKER, Judge.
Plaintiff, Michael Denman Muirhead, brought this action against Transworld Drilling Company (Transworld), Aminoil Development, Inc., and Aminoil USA, Inc. (Aminoil), under the Jones Act and the general maritime law for injuries he sustained on May 9, 1979 when he slipped in a pothole in a shell-covered parking lot and fractured his left wrist. The parking lot was leased by Oil Base, Inc., which later became Hughes Tool Company (Hughes).
Aminoil filed third party demands against Transworld seeking contractual indemnity and against Oil Base, Inc. for in *476 demnity for failure to properly maintain the lot.
TRIAL ACTION
Muirhead’s claim against Transworld and Aminoil was tried to a jury. The third party demands were tried before the judge. The jury returned a verdict in favor of Muirhead, finding Muirhead 18% negligent, Transworld 24% negligent, and Aminoil 58% negligent. The jury found Muirhead’s damages were in the amount of $494,000. The court ruled that Transworld was to indemnify Aminoil for all amounts it had been cast in judgment on the main demand. The court dismissed Aminoil’s third party demand against Hughes. On motions by Aminoil and Transworld, the court ordered a new trial as to the issue of damages unless Muirhead agreed to a remittitur. Ultimately the parties agreed to settle all plaintiff’s claims for $150,000.
PACTS
Aminoil and Transworld entered into a drilling contract on November 10, 1978, which was to govern the performance of work by Transworld on Aminoil’s South Marsh Island Platform 76 “B.” The agreement required Transworld, among other things, to furnish a portable drilling unit and platform tender, and to have certain personnel on the rig. Muirhead worked on the rig as a crane operator. Aminoil was required by the contract to furnish the shore base in Cameron where employees of contractors working for Aminoil would park their cars and board helicopters or boats to transport them offshore.
Muirhead fractured his left wrist on May 9, 1979, on his way home after his work week, when after disembarking from a helicopter at the shore base, he was walking across the parking lot toward his car and, as he looked over his shoulder to spot a riding companion, slipped in a pothole and fell backwards, catching himself on his outstretched hands.
ISSUES ON APPEAL
Transworld has appealed seeking to reverse the judgment awarding Aminoil indemnity. Aminoil has appealed and answered the appeal of Transworld seeking to have its cost of defense on the main demand fixed at $15,000 and, in the alternative, in the event that Transworld is successful in its appeal, for a judgment against Hughes in the amount of any sum that Aminoil is required to pay.
Article XIII of the drilling contract between Transworld and Aminoil provides, in part:
“A. Contractor [Transworld] shall protect, indemnify, investigate, defend, and save Company [Aminoil] and Company’s employees (as well as such other companies and their employees with respect to whose interests Company has been designated and authorized to act as operator in executing this Contract) harmless from and against any and all claims, demands, and causes of action of every kind and character arising in favor of Contractor’s employees and employees of persons employed by Contractor on account of personal injuries, death or damage to property occurring, growing out of, incident to, or resulting directly or indirectly from, the work to be performed by Contractor hereunder, whether such loss or injury is caused or contributed to by Company or Company’s employees or results in any degree from any materials furnished by Company, or the premises themselves, or for any cause whatsoever.”
Transworld argues that the accident involved in this suit was not “occurring, growing out of, incident to, or resulting directly or indirectly from, the work to be performed by Contractor hereunder.” It contends that since it was responsible for drilling and completing wells, and Aminoil was responsible for furnishing the shore base, the accident was incidental to Ami-noil’s work rather than Transworld’s. In response to this argument the trial judge stated:
*477 “The suggestion is made that we’re interpreting the word ‘work’ too broadly, but the work that takes place on the rig site ... on the drilling site itself is necessarily connected with the transportation of the hands to do that work, and these contracts need to be read with the everyday meaning and understand, [sic] and also it’s supposed to be read to be reasonable. The Court feels like the agreement is clear and that the earlier ruling of the Court, which it had retracted because it felt like there were some facts which may need to be established, is going to be reinstated. I'm going to hold that the indemnity agreement is enforceable and grant judgment in favor of Ami-noil and against Transworld on Aminoil’s third party demand.”
We agree with the trial court that the agreement was intended to cover incidents such as Muirhead’s accident. The contract calls for indemnification for injuries resulting directly or indirectly from the work to be performed. This can reasonably be construed to include accidents at the shore base, since employees of Trans-world had to travel to the shore base to be transported from there to the drilling site, and were transported back to the shore base after their work week was over. There was no other way for them to get to or from their work site.
Transworld cites three cases in support of the argument that it is not liable because the hole in the parking lot is not related to the work it performed. McClane v. Sun Oil Company, 634 F.2d 855 (5th Cir.1981), Sun Oil Company v. Penshaw Well Service, Inc., 571 S.W.2d 64 (Tx.Ct. Civ.App. Tyler 1978), and Martin Wright Electric Company v. W.R. Grimshaw Company, 419 F.2d 1381 (5th Cir.1969), cert. denied, 397 U.S. 1022, 90 S.Ct. 1263, 25 L.Ed.2d 532 (1970). The courts involved applied Texas law. The Texas law applied is set forth in the Martin Wright case:
“An analysis of the relevant Texas jurisprudence shows that when the accident or injury is caused by the negligence of the indemnitee, the circumstances of the cause of the accident, the negligent acts or omissions, are examined by the courts to determine if they had any connection with, involvement with or relation to the performance of the work of the idemnitor. If they had none, the injuries are not considered as having any ‘connection with’ the work, ‘arising out of’ it, or ‘resulting from’ it under language of contracts having such broad connotation.”
Texas law does not apply to the case at bar. The drilling contract we must construe regards drilling from a fixed platform in the Gulf of Mexico. Such fixed platforms are considered artificial islands. Rodrigue v. Aetna Casualty and Surety Company, 395 U.S. 352, 89 S.Ct. 1835, 23 L.Ed.2d 360 (1969). Under Rodrigue and the Outer Continental Shelf Lands Act, 43 U.S.C.A. Sec. 1331, et seq., federal law, supplemented with state law of the adjacent state, is to be applied to these artificial islands. We must apply the law of Louisiana, the adjacent state, as there is no inconsistent federal law applicable.
Louisiana courts have not adopted the narrow construction Texas courts use in the reading of indemnity agreements. Where there is anything doubtful in indemnity agreements the courts in Louisiana will endeavor to ascertain what the common intent of the parties was, rather than adhere to the literal sense of the terms. Poole v. Ocean Drilling & Exploration Co., et al, 439 So.2d 510 (La.App. 1st Cir. 1983), writ denied, 443 So.2d 590 (La.1983), Polozola v. Garlock, Inc., 343 So.2d 1000 (La.1977). The trial judge found that the parties intended that Aminoil would be indemnified by Transworld if any Transworld employee brought a suit such as Muirhead brought. We find no error in that finding.
Aminoil answered Transworld’s appeal asking that the cost of its defense be fixed at $15,000. The judgment signed by the trial judge states that Transworld is cast for the cost of the defense of the main demand by Muirhead against Aminoil. We agree that the costs of defense should be fixed but believe the trial court is in a better position to do so. We remand the *478 case to the trial court for the fixing of costs of defense.
The judgment of the trial court is affirmed and the case is remanded to the trial court for further proceedings consistent with this opinion.
AFFIRMED, AND REMANDED FOR FURTHER PROCEEDINGS.