YELVERTON, Judge.
These cases are before us on appeals from two summary judgments rendered in third party actions. The main demand was an action for personal injury damages resulting from a collision between two vessels on White Lake on December 8, 1985. The summary judgments were rendered in contests over the interpretation of an indemnity clause in a contract between the defendant in the main demand and the defendants in the third party action. The personal injury case was settled, and what is before us now is who has to ultimately pay.
The background facts are as follows. The injured main demand plaintiffs were Craig Rodrigue and his wife. Craig Ro-drigue was the captain of the crew boat M/V PRISCILLA ANN, owned by Two “R” Drilling Company, Inc. On December 8, 1985, the PRISCILLA ANN, operated by Rodrigue, was in White Lake in Vermilion Parish and collided with the M/V MISS SUPERIOR 77, owned by Mobil Exploration & Producing North America, Inc., and captained by Elery J. LeGros.
A drilling contract between Mobil and Two “R” was in effect on the date of the accident. The function of Two “R” ’s crew boat PRISCILLA ANN was to service Two “R” ’s Drilling Rig No. 19, which had been provided under the drilling contract, along with the crew boat and its Captain Ro-drigue, for Mobil’s use in the drilling of a well in White Lake. On the day of the collision, Rodrigue and the PRISCILLA ANN were engaged in activities directly connected to the work being performed under the drilling contract.
The other vessel, Mobil’s MISS SUPERIOR 77, and its captain, LeGros, were not engaged in activities directly connected to the work being performed under the drilling contract. On the contrary, LeGros and the MISS SUPERIOR 77 were en route to a Mobil central tank in the White Lake field on Mobil production business having nothing to do with the drilling contract between Mobil and Two “R”.
Mobil acknowledges for summary judgment purposes that the collision was caused solely by the negligence of its Captain LeGros' and the MISS SUPERIOR 77.
*705 Rodrigue was injured in the collision and sued LeGros and Mobil for damages. Mobil third partied Two “R” and its liability carrier, Employers Insurance of Wausau, under an indemnity clause in the drilling contract between Mobil and Two “R”. Relying on the indemnity agreement, Mobil sought a defense of the main demand and indemnification from Two “R” and its insurer. In the third party action Two “R” reconvened for the damages to its vessel in the collision, and Two “R” and Wausau reconvened for the maintenance and cure benefits paid to Rodrigue. By means of a second motion for summary judgment, Mobil sought dismissal of these reconventional demands.
These motions for summary judgment were presented to the trial court, and the court granted summary judgments on each motion in favor of Mobil, one decreeing that Two “R” owed Mobil a defense and indemnification, and the other dismissing the demands of Two “R” and its insurer in their reconventions.
The indemnity clause in question is Article 15.4 of the drilling contract. In the contract Two “R” is the Contractor and Mobil is the Company. The article reads:
15.4 To the extent permitted by applicable law, and except as may otherwise be specifically provided herein, Contractor shall defend, protect, indemnify and save Company, its co-lessees and joint interest owners, their respective parent and/or affiliated companies and their respective employees, servants and agents, harmless against any and all claims, demands, causes of action and judgments of every kind and character, including indemnity claims, court costs and attorney’s fees, arising directly or indirectly, by law, tort or contract, in favor of any person on account of personal injuries to or death of any employee, servant or agent of Contractor or any sub-contractor of Contractor, or damage to or loss of property of Contractor, any sub-contractor of Contractor, or their respective employees, servants or agents, occurring, growing out of, incident to, or resulting directly or indirectly from the Work, whether such loss, damage, injury, death or liability arises from or is contributed to by the fault or negligence in any form of Company, or its employees, servants or agents, or whether due to the imperfection of any material provided by Company or the premises themselves, whether latent or patent, or for any other cause whatsoever. This indemnification shall not be limited to or by the amounts or kinds of insurance carried by, or required to be carried by, Contractor.
The trial court concluded that Rodrigue’s claim against Mobil was covered by the agreement, because it was a claim resulting from injuries sustained while engaged in “the Work”, and that whether or not the activity of Mobil at the time of the accident arose out of “the Work” was inconsequential.
Two “R” ’s primary contention on appeal is that a correct interpretation of the indemnity language requires a finding that it does not owe indemnity to Mobil for Mobil’s liability, when such liability arises out of the negligence of a Mobil employee engaged in an endeavor unrelated to their drilling contract. Alternatively, Two “R” argues that the indemnity language is ambiguous, requiring parol evidence for its understanding, so as to preclude resolution of the primary issue by summary judgment.
GOVERNING LAW
This was a maritime contract with no choice of law clause. Accordingly, maritime law governs our decision. Stoot v. Fluor Drilling Services, Inc., 851 F.2d 1514 (5th Cir.1988). Because federal maritime law applies, Louisiana’s Anti-Indemnity Statute (La.R.S. 9:2780) does not. Daughdrill v. Ocean Drilling and Exploration Co., 665 F.Supp. 477 (E.D.La.1987).
OPINION
We conclude that the trial judge was right. Mobil is entitled to indemnity. Rodrigue’s injury arose out of performance of “the Work” by Two “R”. That is all that matters to trigger the indemnity clause. It does not matter that the fault- *706 cause of the injury, the activity of Mobil’s Captain LeGros, did not arise out of the performance of “the Work”.
In the maritime law parties have the absolute right to prescribe their respective indemnity obligations, and if the courts find that the contract is applicable to the facts of the case, the contract must be applied. Cormier v. Rowan Drilling Co., 549 F.2d 963 (5th Cir.1977). We find this in Cormier:
The whole purpose behind these provisions is to make sure that the [parties] are each solely responsible for anything that happens to their own respective employees, regardless of fault.
Id., at 969, 970.
Interpretation of the terms of a contract, including an indemnity clause/ is a matter of law, reviewable de novo on appeal. Kemp v. Gulf Oil Corp., 745 F.2d 921, 924 (5th Cir.1984). The case of Corbitt v. Diamond M. Drilling Co., 654 F.2d 329 (5th Cir.1981), contains language helpful in interpreting indemnity clauses, particularly those such as we have here which purport to protect an indemnitee against his own negligence. The court said:
A contract of indemnity should be construed to cover all losses, damages, or liabilities which reasonably appear to have been within the contemplation of the parties, but it should not be read to impose liability for those losses or liabilities which are neither expressly within its terms nor of such a character that it can be reasonably inferred that the parties intended to include them within the indemnity coverage. Thus, for example, it is widely held that a contract of indemnity will not afford protection to an indemnitee against the consequences of his own negligent act unless the contract clearly expresses such an obligation in unequivocal terms. See, e.g., United States v. Seckinger, 397 U.S. 203, 211-13, 90 S.Ct. 880, 885-86, 25 L.Ed.2d 224, 232-234 (1970); Transcontinental Pipe Line Corp. v. Mobile Drilling Barge, 424 F.2d [684] at 691-92. [(5th Cir.1970)] A contract to indemnify another for his own negligence imposes an extraordinary obligation. Thus an indemnitor is entitled to express notice that under his agreement, and through no fault of his own, he may be called upon to pay damages caused solely by the negligence of his indemnitee.
Id., at 333.
In Fontenot v. Mesa Petroleum Co., 791 F.2d 1207, 1216 (5th Cir.1986), the court explained that the purpose of indemnity agreements in these oilfield service contracts
... is to divide the responsibility for personal injury/death among the many employers and contractors according to the identity of the injured employee rather than according to which party’s fault or negligence caused the injury. In effect, each party assumes the risk of the other’s negligence and agrees to be responsible for injuries to its own employees no matter how, or by whom, caused, (emphasis ours)
Id., at 1216.
Fontenot also tells us that the federal Fifth Circuit gives a broad construction to such phrases as “in connection with” in indemnity agreements, to unambiguously encompass all activities reasonably incident to or anticipated by the principal activity of the contract:
[W]here the presence of the injured person at the scene of the injury is attributable to or might reasonably be anticipated by his employment responsibilities, then his injuries occur ‘in connection with’ those responsibilities.
Id., at 1215.
Fontenot pointed out that parties can, if they wish, contract for a more precise definition of their indemnity obligations, for example, by defining indemnity obligations according to which party’s negligence caused the injury, or by limiting indemnity obligations to injuries incurred during working hours or during particularized operations, but that, absent more precise language in maritime contracts, the Fifth Circuit broadly construes “in connection with” and similar terms included in indemnification agreements. Id., at 1215-16 n. 8.
The case of Muirhead v. Transworld Drilling Co., 469 So.2d 474 (La.App.3d Cir. *707 1985), construed an indemnity provision not unlike the one before us under Louisiana law, not under the maritime law. However, this case demonstrates that the standard for construing indemnity provisions under Louisiana law is substantially identical to the standard under maritime law; that is to say, such phrases as “in connection with” are given a broad construction. See Fontenot, 791 F.2d at 1214 n. 6. Accordingly, Muirhead is helpful to our analysis in the present case. The plaintiff in Muirhead, an employee of Transworld Drilling Company, was injured after he had been flown back to an onshore base from the platform where his employer was drilling. Aminoil and Transworld had a drilling contract, under which Transworld furnished a drilling unit and certain personnel on the rig and Aminoil furnished a shore base in Cameron for parking cars and loading helicopters and boats for ferrying personnel. After getting off a helicopter, coming home, Muirhead was walking across the parking lot toward his car when he slipped in a pothole, fell, and injured himself. Their contract required Trans-world to indemnify Aminoil “against any and all claims, demands, and causes of action of every kind and character arising in favor of [Transworld’s] employees ... on account of personal injuries ... occurring, growing out of, incident to, or resulting directly or indirectly from, the work to be performed....” Muirhead, at 476.
Transworld sought to avoid indemnification because the basis for liability (the hole in the parking lot) was not related to the work that Transworld was performing under the contract providing the indemnity. It argued that the accident was incident to Aminoil’s work rather than Transworld’s. Rejecting Transworld’s argument, this court affirmed a trial court holding that the indemnity agreement was enforceable. We said:
The contract calls for indemnification for injuries resulting directly or indirectly from the work to be performed. This can reasonably be construed to include accidents at the shore base, since employees of Transworld had to travel to the shore base to be transported from there to the drilling site, and were transported back to the shore base after their work week was over. There was no other way for them to get to or from their work site.
Id., at 477. We agreed with the Muirhead trial court that this was not an overbroad construction of the word “work” in the indemnification clause.
Applying the above federal precepts to the contract language in the present case, and being consistent with our interpretation of a virtually identical contract in the Muirhead case, we hold that the language “occurring, growing out of, incident to, or resulting directly or indirectly from the Work”, has reference to whether Two “R” ’s Rodrigue was engaged in activity related to “the Work” at the time of the accident, and not to whether the source of liability, the conduct of Mobil’s personnel, was related to “the Work”. To show how plainly this result must obtain, we here repeat the pertinent language of the indemnity clause:
[Two “R”] shall ... indemnify ... [Mobil] ... against any and all claims, demands, causes of action and judgments of every kind and character, ... arising directly or indirectly, by law, tort or contract, in favor of any person on account of personal injuries to or death of any employee of [Two “R”], ... occurring, growing out of, incident to, or resulting directly or indirectly from the Work, whether such loss, damage, injury, death or liability arises from or is contributed to by the fault or negligence in any form of [Mobil] ... or for any other cause whatsoever.
This language unambiguously means that if one of Two “R”-’s employees is injured while performing some activity related to the work under the drilling contract, Two “R” must bear the loss, and that it is irrelevant that such loss or injury arises from or is contributed to by the fault or negligence in any form of Mobil. As stated earlier in this opinion, the summary judgment evidence establishes that at the time of the accident the plaintiff, Rodrigue, and the PRISCILLA ANN were engaged in activities directly connected to the work being performed under the drilling con *708 tract. On the morning of the accident Ro-drigue was awakened on Rig No. 19 and instructed to ferry a service hand from the rig to shore. It was while the boat was under way between these two points that the injury occurred. Mobil is entitled to indemnity from Two “R”.
On this appeal Two “R” relies principally on three cases which it asserts are on point and establish a rule that the source of liability must be connected with the work in order for the obligation of indemnity to arise. These cases are Lanasse v. Travelers Ins. Co., 450 F.2d 580 (5th Cir.1971), cert. denied sub nom. Chevron Oil Co. v. Royal Ins. Co., 406 U.S. 921, 92 S.Ct. 1779, 32 L.Ed.2d 120 (1972); Hobbs v. Teledyne Movible Offshore, Inc., 632 F.2d 1238 (5th Cir.1980); and Smith v. Tenneco Oil Co., 803 F.2d 1386 (5th Cir.1986).
In each of those cases, an offshore platform owner sought indemnity from a vessel owner when the plaintiff was injured on a vessel as a result of the negligence of the crane operator on the platform. The vessel owner in each case had agreed to indemnify the platform owner for injuries arising, directly or indirectly, out of the operation of the vessel. In Lanasse, the plaintiff was on the deck of the vessel, and a platform mounted crane was unloading a welding machine from the vessel. He was injured solely on account of the fault of the crane operator. In Hobbs and Smith, the plaintiffs themselves were being offloaded from the platform by means of a crane mounted on the platform, to the vessel, and because of the negligence of the crane operator, the plaintiffs were injured. The performance of the charter agreements in all three of these eases involved the possession, navigation, management and operation of the vessel. In each of the cases, the Fifth Circuit held that the activity which resulted in the plaintiffs injury was not incident to the performance of the charter agreement, because it was not encompassed in the terms “operation” and “navigation” of the vessel. The Lanasse court pointed out that, as broad as the terms “operation, navigation or management” are, “... they do not comprehend an occurrence in which the vessel’s sole contribution is to be there as the carrier from which the cargo is being removed.” Id., at 583. In Smith the court stated:
[The vessel owner’s] performance of the charter agreement was still incipient when [Tenneco’s] crane operator dropped Smith on the M/V MARGARET G’s deck. When Smith was injured, the M/V MARGARET G was nothing more than a bystander waiting for the opportunity to perform its task.
Smith, at 1389.
Our examination of these three cases causes us to conclude that they are factually distinguishable. The Fifth Circuit found the facts in each of these three cases to be that the vessel was doing nothing, and that the activity out of which the injury arose was not even remotely related to the operation, navigation or management of the vessel. The difference between the facts of those three cases, and the facts of the present case, is this: Rodrigue was unquestionably engaged in the work contemplated by the drilling contract when his accident happened. The vessel on which his accident occurred was under way on the lake and his injury on the vessel occurred, grew out of, was incident to, and resulted directly from the work of the contract.
The judgment of the trial court is affirmed at appellants’ costs.
AFFIRMED.