803 F.2d 1386
 1987 A.M.C. 1681
 Michael J. SMITH, et al., Plaintiffs,
v.
TENNECO OIL CO., INC. and Operators, Inc.,
Defendants-Cross-Claimants, Appellants, Cross-Appellees,
v.
JOHN E. GRAHAM & SONS and Highland Insurance Co.,
Defendants-Cross- Defendants, Appellees, Cross-Appellants.
 No. 86-4040.
 United States Court of Appeals,
Fifth Circuit
 .
Nov. 10, 1986.
 
 Fred E. Salley, New Orleans, La., for defendants-cross-claimants, appellants, cross-appellees.
 Woodley, Barnett, Cox, et al., Clayton A.L. Davis, Lake Charles, La., for defendants-cross-defendants, appellees, cross-appellants.
 Appeals from the United States District Court for the Western District of Louisiana.
 Before CLARK, Chief Judge, REAVLEY and WILLIAMS, Circuit Judges.
 CLARK, Chief Judge:
 
 
 1
 Tenneco Oil Company (Tenneco), the owner of an offshore drilling platform, and Operators, Inc. (Operators), the company conducting drilling operations on the platform, appeal the district court's denial of Operators' claim for indemnity from John E. Graham & Sons (Graham), the owner and operator of the M/V MARGARET G, a vessel chartered by Tenneco. Tenneco also appeals the district court's limitation of Tenneco's recovery of indemnity from Graham, and the district court's determination that Tenneco and Operators were not covered by a protection and indemnity policy issued to Graham by Highlands Insurance Company (Highlands). Graham cross-appeals the district court's holding that Tenneco was entitled to indemnity from Graham, and the district court's failure to grant Graham indemnity from Danos & Curole Marine Contractors, Inc. (Danos & Curole), a firm having a service contract to perform support services for Tenneco. Danos & Curole was also the employer of the injured plaintiff, Michael J. Smith.
 
 
 2
 We reverse the district court's holding that Tenneco is entitled to indemnity from Graham. We affirm the remainder of the judgment.
 
 I.
 
 3
 Smith and his wife filed suit against Tenneco, Operators, Danos & Curole, and Graham. Tenneco and Operators cross-claimed against Graham for indemnity under the Blanket Time Charter between Tenneco and Graham. They also cross-claimed against Graham for indemnity as additional assureds under Graham's protection and indemnity policy from Highlands. Danos & Curole intervened in the suit as Smith's employer for reimbursement of worker's compensation and medical payments totaling $54,338.00. Danos & Curole cross-claimed against Graham for indemnity as a beneficiary of the contract between Tenneco and Graham. In response, Graham cross-claimed for indemnity against Danos & Curole as a beneficiary of the contract between Tenneco and Danos & Curole.
 
 
 4
 After opening statements to the jury, a settlement was reached between the plaintiffs, Tenneco, Operators and Danos & Curole. The plaintiffs dismissed their claims against all defendants except Graham and received $130,000.00. Tenneco and Operators settled their claim for indemnity against Danos & Curole. Danos & Curole advanced $50,000.00 and waived its intervention. Tenneco and Operators assumed Danos & Curole's cross-claim against Graham. The plaintiffs agreed to defend and indemnify Danos & Curole against the indemnity claim of Graham for any amount above the $50,000.00 Danos & Curole paid to Tenneco & Operators. The plaintiffs' claim against Graham proceeded.
 
 II.
 
 5
 Smith was injured while being lowered in a personnel basket from Tenneco's oil platform in the Gulf of Mexico to the deck of the M/V MARGARET G. Operators was a wholly owned subsidiary of Tenneco. The jury determined that at the time of the accident, Smith was a borrowed employee of Operators. The jury also determined the accident was solely caused by the negligence of Operators' crane operator. The crane operator's foot slipped off the brake when he sat up to get a better view.
 
 
 6
 At the time of the accident, the M/V MARGARET G had been called by Operators to pick up passengers from the platform. The jury found that the vessel was not at fault in the accident in any way.
 
 
 7
 On the cross-claims, the district court held that Graham did have an obligation under the Blanket Time Charter to indemnify Tenneco but did not have an obligation to indemnify Operators or Danos & Curole. The district court limited Graham's obligation to indemnify Tenneco to the costs and fees incurred prior to the time the court determined Tenneco should have moved for summary judgment. The district court held Graham was not entitled to indemnity from Danos & Curole, and that Tenneco and Operators were not covered by Graham's insurance policy from Highlands.
 
 III.
 
 8
 On appeal, Tenneco and Operators assert that the district court erred in deciding that the Blanket Time Charter between Graham and Tenneco did not provide indemnity protection to Operators and did not cover all of Tenneco's legal costs and attorneys fees. These issues are moot because we find that the indemnity provision in the Charter did not apply to the negligent operation of a crane on Tenneco's platform.
 
 
 9
 Interpretation of the indemnity clause in the context of this action presents a matter of law that is reviewable de novo on appeal. Kemp v. Gulf Oil Corp., 745 F.2d 921, 924 (5th Cir.1984). Indemnity agreements are to be strictly construed. Marathon Pipeline v. Drilling Rig ROWAN/ODESSA, 527 F.Supp. 824, 835 (E.D.La.1981), aff'd, 699 F.2d 240 (5th Cir.1983), cert. denied, 464 U.S. 820, 104 S.Ct. 82, 78 L.Ed.2d 92. In two prior cases involving very similar facts, panels of this court have held that indemnity provisions in charter parties do not apply to the negligent operation of a crane on the charterer's drilling platform. In Lanasse v. Travelers Insurance Co., 450 F.2d 580, 583 (5th Cir.1971), the indemnity provision in the charter applied to claims "directly or indirectly connected with the possession, management, navigation, and operation" of the vessel. This court held the provision did not cover injuries that occurred when a crane operator on the drilling platform allowed a load to swing into a worker on the vessel's deck. As in this case, the crane operator's negligence was found to be the sole cause of the injury. The court stated:
 
 
 10
 As broad as these terms are to comprehend injuries caused by the operation of the vessel in a practical sense, they do not comprehend an occurrence in which the vessel's sole contribution is to be there as the carrier from which the cargo is being removed.
 
 
 11
 Id. at 583.
 
 
 12
 Lanasse was followed in Hobbs v. Teledyne Movible Offshore, Inc., 632 F.2d 1238 (5th Cir.1980). The indemnity provision in Hobbs contained the same wording as in Lanasse. The facts in Hobbs were even closer to the present case. The plaintiff was injured while being transferred by a crane from the drilling platform to a crew boat. A jury determined the accident was solely due to the crane operator's negligence. The panel affirmed the district court's holding that the vessel was not obligated to indemnify the plaintiff's employer because "the operation of the crane was not even remotely related to the operation, navigation or management of the vessel." Id. at 1241.
 
 
 13
 In this case, the district court attempted to distinguish Hobbs and Lanasse from the present case due to differences in the contract language.[1] The district court pointed out that the provision in the present case applies to any claim that "arises out of or is incident to performance" of the charter agreement, whereas the provisions in Hobbs and Lanasse applied to claims "connected with the possession, navigation, management and operation of the vessel." This is a distinction without a substantial difference. The performance of the charter in the present case involves possession, navigation, management and operation of the vessel. Although it may involve other activities, it does not involve those aspects of operation of the crane on the drilling platform which are independent of the operation of the M/V MARGARET G. If the crane operator had chosen to get Smith from the platform to the M/V MARGARET G by pushing him off the edge of the platform onto the deck of the vessel, his injury would have been physically caused by the fact that the deck broke his fall. However, Hobbs and Lanasse teach that his injury was not directly or indirectly connected with the operation of the M/V MARGARET G. By precisely the same logic, we must hold that his unfortunate collision with the deck did not cause his injury to arise out of or to be incident to the performance of the charter agreement. For the purposes of this accident, the two clauses, "directly or indirectly connected with the operation of the vessel" and "[arising] out of or incident to the performance of the charter agreement," have the same meaning. The district court erred in its determination that the extent of coverage of the indemnity agreement involved in Hobbs and Lanasse was distinguishable from the agreement in the present case on the basis of this language difference.
 
 
 14
 The district court also distinguished the provisions in Hobbs and Lanasse by stating that the clauses in those cases did not provide coverage for damages that were not due to the vessel's fault, whereas the provision in this case expressly did so. The provisions in Hobbs and Lanasse stated they applied to "any and all claims ... howsoever arising in any way directly or indirectly" connected with the possession, navigation, management, and operation of the vessel. Lanasse, 450 F.2d at 582, n. 4. The provision in the present case covers claims "regardless of whether such [claim] is attributable in whole or in part to the ... legal fault ... of third parties. Again, we hold the distinction is not a meaningful one. Although the provision in the present case would explicitly cover an accident that was the sole fault of a third party, it does not purport to bring within the indemnity an accident which is not incident to the performance of the charter agreement as we have broadly construed such clauses in Fontenot v. Mesa Petroleum Co., 791 F.2d 1207 (5th Cir.1986). Graham's performance of the charter agreement was still incipient when Operators' crane operator dropped Smith on the M/V MARGARET G's deck. When Smith was injured, the M/V MARGARET G was nothing more than a bystander waiting for the opportunity to perform its task. The fact that the sole legal fault was that of the crane operator would not relieve Graham of the duty to indemnify if an event within the coverage of the undertaking had occurred. However, the specific inclusion of third-party fault does not broaden the basic coverage of the indemnity agreement to events that do not arise out of or are not incident to the performance of the charter agreement. We reverse the district court and hold the charter party between Graham and Tenneco does not obligate Graham to indemnify Tenneco for this accident.
 
 IV.
 
 15
 Graham asserts it is entitled to indemnity from Danos & Curole pursuant to the Service Contract between Danos & Curole and Tenneco. We affirm the district court's denial of this claim. The Service Contract provides indemnity to Tenneco's agents. The district court's determination that Graham was a subcontractor, not an agent of Tenneco, is not clearly erroneous. Therefore, Graham is not covered by the Service Contract.
 
 V.
 
 16
 The district court did not err in determining that Tenneco and Operators were not covered by the protection and indemnity policy Highlands issued to Graham. The policy states it provides indemnity "against the liabilities of the assured ... in respect to the vessel." The jury found there was no fault on the part of the vessel. This provision does not indemnify for accidents in which the vessel had no part.
 
 CONCLUSION
 
 17
 We reverse the district court's holding that Graham is obligated under the Blanket Time Charter to indemnify Tenneco. Tenneco's appeal for additional indemnity coverage from Graham is therefore moot.
 
 
 18
 We affirm the district court's denial of Operators' claims against Graham, and Graham's claim against Danos & Curole. We also affirm the district court's determination that Tenneco and Operators are not entitled to coverage under the Highlands policy.
 
 
 19
 REVERSED, in part, and AFFIRMED, in part.
 
 
 
 [1]
 The relevant section of the Charter states:
 Owner agrees to protect, defend, indemnify, reimburse, compensate and hold Charterer, its joint venturers, joint interest owners, their agents and employees free and harmless from and against any and all losses, claims, demands, causes of action or judgments of every kind and character by any party hereto, their agents or employees, or by any third party of governmental agency, for injury to or illness to or death of any person, or for damage to or loss of or destruction of any property, or for fine or penalty of any nature, which injury, illness, death, damage, loss, destruction, fine or penalty arises out of or is incident to performance hereunder or a breach hereof and regardless of whether such is attributable in whole or in part to the negligence, strict liability or other legal fault of Charterer, its joint venturers, joint interest owners, their agents or employees, or third parties.