**Hubbard F. DAUGHDRILL**

v.

**OCEAN DRILLING AND EXPLORATION COMPANY (ODECO), et al.**

**Civ. A. No. 85–5559.**

United States District Court,
E.D. Louisiana.

Dec. 30, 1988.

---

**1268**

Stephen B. Murray, Murray Law Firm, New Orleans, La., for plaintiff.

Edward Kohnke, IV, Charles R. Talley, Lemle, Kelleher, Kohlmeyer, Dennery, Hunley, Moss & Frilot, New Orleans, La., for defendants, ODECO and The D/S Ocean Explorer.

Thomas Wagner, Michael Bagot, Wagner & Bagot, New Orleans, La., for defendant, Trico, Inc.

## ORDER & REASONS

MENTZ, District Judge.

This is an action brought by Hubbard Daughdrill, a toolpusher employed by Ocean Drilling & Exploration Company (ODECO), to recover damages he sustained while being transferred from ODECO's drilling rig, the OCEAN EXPLORER, to the deck of the M/V AMERICAN RIVER, a crewboat owned and operated by Trico Marine, Inc. (Trico). Daughdrill claimed that ODECO was negligent under the Jones Act in, inter alia, failing to properly operate the crane which lowered Daughdrill from ODECO's drilling rig to Trico's crewboat. Daughdrill's claim against Trico was brought under general maritime law and alleged that Trico negligently failed to grab the tag line on the personnel basket as it was lowered in order to prevent the basket from hitting the hand rail on the M/V AMERICAN RIVER. ODECO filed a cross-claim against Trico for contractual indemnity based on the master service contract between the parties. In this cross-claim, ODECO seeks to be indemnified for its own negligence and requests attorney's fees and payments made to Daughdrill for maintenance and cure.

The action was tried to a jury on April 11–14, 1988. Trico and ODECO settled Daughdrill's claims during the trial, reserving the apportionment of liability between themselves to the jury. The jury found Trico seventy percent (70%) at fault and ODECO thirty percent (30%) at fault in causing plaintiff's injuries. The Court directed the parties to file post-trial memorandum on issues raised in ODECO's cross-claim, at which time the matter was taken under submission.

ODECO's claim for attorney's fees is restricted to legal fees and costs incurred in defending plaintiff's claim for compensatory damages. ODECO is not entitled to recover legal fees and costs incurred in establishing its right to indemnification, *see Weathersby v. Conoco Oil Co.*, 752 F.2d 953 (5th Cir.1984), or in defending plaintiff's claim for punitive damages. *See Daughdrill v. Ocean Drilling and Exploration Co.*, 665 F.Supp. 477, 481–482 (E.D. La.1987). The determination of the amount of attorney's fees ODECO is entitled to recover was referred to the Magistrate pursuant to 28 U.S.C. § 636(b) for an evidentiary hearing and the submission of findings and recommendation. The Magistrate issued his findings and recommendation on October 25, 1988, finding that seventy percent (70%) of the $92,809.26 in legal expenses incurred by ODECO were attributable to the defense of the main demand, and that thirty percent (30%) were attributable to ODECO's claim for indemnity and/or contribution and to defending plaintiff's claim for punitive damages. Trico filed a timely objection to the Magistrate's findings and recommendation. At the hearing on Trico's objections, the Court adopted the Magistrate's 70/30 apportionment of attorney's fees. However, the Court agreed to apply this percentage only to $59,660.19 of the legal fees incurred by ODECO for the reason that $33,149.07 in "miscellaneous charges" were not clearly identified. The Court ordered ODECO to provide additional information on the $33,149.07 in miscellaneous charges within ten (10) days, at which time Trico's objections were taken under submission.

The Court, after reviewing the memorandum, the evidence presented at trial, the record, and the law, finds that ODECO is entitled to be indemnified for its own negligence from Trico, that ODECO is to be reimbursed for maintenance in the amount of $15,645.00 and cure in the amount of $48,901.60, and that ODECO is entitled to attorney's fees in the amount of $64,966.48.

## INDEMNIFICATION

■ ODECO retained the services of Trico to transport personnel to and from the rig, the OCEAN EXPLORER. For this purpose, Trico used a crewboat, the M/V AMERICAN RIVER, with a crew comprised of three Trico employees. The procedure by which the transportation of ODECO crew members was accomplished was described at trial as follows. The M/V AMERICAN RIVER would dock shoreside to receive passengers (OCECO employees) who were traveling to the rig. The vessel would then navigate to the rig where, according to the testimony at trial, it was supposed to assist in the crew exchange procedure. The testimony established that the crew exchange was accomplished by means of a "Billy Pugh personnel basket" attached to a crane located on the Ocean Explorer. Specifically, the captain of the M/V AMERICAN RIVER had to properly position the vessel adjacent to the rig. As the crane operator on the rig lowered the personnel basket, the vessel had to position itself under the personnel basket and its crew had to assist the lowering of the personnel basket onto the deck by grabbing the tagline attached to the personnel basket.

The indemnity agreement found in paragraph 9 of the Master Service Contract between ODECO and Trico provides:

It is agreed and understood that it is in the best interest of the parties that certain risks of the enterprise in which they are engaged should be identified and allocated as between them. It is, therefore, the intent of this paragraph to provide for indemnity to the maximum extent permitted by law and to support such indemnity by liability insurance coverage to be furnished by this indemnitor.

*Contractor [Trico] agrees to indemnify, defend and hold harmless Company [ODECO] from and against* all liens and claims for labor or material, and against any and *all claims, demands, or actions for damages to persons* and/or property (including, but not limited to claims, demands, or action for bodily injury, illness, disease, death, loss of service, loss of society, maintenance, cure, wages, or property), *which may be brought against Company* [including, but not limited to such claims, demands, or actions brought by Contractor's employees and agents and the employees and agents of its subcontractors; by way of illustration, but not by way of limitation, any person who is on Contractor's payroll and receives, has received or is entitled to receive payment from Contractor in connection with any work performed or to be performed hereunder shall be the employee of Contractor for purposes of this Paragraph 9] *incident to, arising out of, in connection with, or resulting from the activities of Contractor*, its employees and agents or its subcontractors and their employees and agents, *or in connection with the work to be done, services to be performed or material to be furnished under this Contract* or under contracts referred to in Paragraph (1)(b) above, *whether occasioned, brought about, or caused in whole or in part by the negligence of Company*, its agents, employees, officers, directors, or subcontractors or otherwise, or by unseaworthiness of any vessel owned, operated, or contracted by the Company or by any defective condition of any equipment of Company (whether or not existing prior to the date of this agreement), regardless of whether such negligence, unseaworthiness, or defective condition be active or passive, primary, or secondary. (Emphasis added.)

Subsequently, the parties entered into a letter agreement for the time charter of the M/V AMERICAN RIVER to ODECO pursuant to the terms and conditions of the Master Service Contract. On November 6,

1984 a second letter was executed, increasing the rate of charter hire for the M/V AMERICAN RIVER an additional $190 per day, for a total of $940 per day. The letter agreement also specifically provided: "All other terms of the referenced Time Charter and corresponding Master Service Contract shall remain the same." Plaintiff's accident occurred on December 4, 1984.

Prior to the trial of this action, ODECO moved for summary judgment on the indemnity issue which the Court denied because there were genuine questions of material fact in dispute. The Court stated:

> The present provision compels indemnification in situations relating to the activities of Trico. Trico's "activity" was the furnishing of a vessel. As such, while certainly phrased differently, the indemnification clause has the same operative effect as those in *Lanasse, Hobbs,* and *Smith.* In the context of discussing P & I coverage, the Court in *Lanasse* stated that
>
>> There must be at least some causal operational relation between the vessel and the resulting injury. The line may be a wavy one between coverage and non-coverage ... where injury is done through non-vessel operations, the vessel must be more than the inert locale of injury. 450 F.2d [580] at 584 [ (5th Cir.1971) ].
>
> Whether such a causal link or relational basis exists between the injury and the operational functions of Trico is a factual inquiry unsuited for resolution on a motion for summary judgment.

*See* 665 F.Supp. at 481.

Trico argues that the indemnity clause in the Master Service Contract, by its own terms, does not cover ODECO's rig based fault. Trico asserts that paragraph 9 only requires Trico to indemnify ODECO for claims "incident to, arising out of, in connection with, or resulting from the activities of [Trico] its employees and agents ... in connection with the work to be done, services ... performed or materials furnished under this contract...." Since the Master Service Contract and Time Charter only contemplate Trico's furnishing a ves-

sel, the M/V AMERICAN RIVER, Trico argues that cannot be responsible for the consequences of ODECO's rig negligence. Trico believes ODECO's contention that the contract provides indemnification for ODECO's rig fault renders the indemnity provision ambiguous and, as such, the ambiguity should be resolved against the party seeking protection for its own fault. *See, e.g., Seal Offshore, Inc. v. American Standard, Inc.,* 736 F.2d 1078 (5th Cir.1984).

In support of its argument that the indemnity provision does not require indemnity for ODECO's rig negligence, Trico cites the following Fifth Circuit jurisprudence: *Lanasse v. Travelers Insurance Co.,* 450 F.2d 580 (5th Cir.1971), *cert. denied,* 406 U.S. 921, 92 S.Ct. 1779, 32 L.Ed.2d 120 (1972); *Hobbs v. Teledyne Movible Offshore, Inc.,* 632 F.2d 1238 (5th Cir.1980); and *Smith v. Tenneco Oil Co., Inc.,* 803 F.2d 1386 (5th Cir.1986).

In *Lanasse,* a deckhand was injured while on the deck of a vessel when he was struck by a welding machine which was being lifted from the deck of the vessel by a crane on a production platform. The District Court found that the *sole* proximate cause of the injury was the negligence of Chevron's crane operator, that the vessel was not unseaworthy, and that no member of the vessel's crew was guilty of negligence. In assessing Chevron's right to indemnity from Cheramie, the operator of the vessel, the Court stated:

> The indemnity provision in the time charter insulated Chevron only against liability for claims 'directly or indirectly connected with the possession, management, navigation, and operation' of the vessel. Cheramie does not have a legal responsibility for the consequences of the negligent operation of the crane—the proximate cause of the injury—because, on the facts found, the operation of the crane was not even remotely related to the operation, navigation or management of the vessel.

*Lanasse,* 450 F.2d at 583.

A similar factual scenario was present in *Hobbs,* wherein the *Lanasse* holding was affirmed. The crew boat's liability under

the contract in *Hobbs* arose from the "operation, navigation or management of the vessel." *Hobbs*, 632 F.2d at 1241. Since the *sole* proximate cause of Hobbs' accident was the negligence of the rig owner's crane operator, the crew boat owner was not responsible for indemnifying the rig owner.

Similarly, in *Smith v. Tenneco Oil Co., Inc.*, 803 F.2d 1386 (5th Cir.1986), the plaintiff was injured while being transferred by a crane from the drilling platform to a crew boat. The jury determined that the accident was caused *solely* by the negligence of Tenneco's crane operator. In order to get a better view, the crane operator sat up and his foot accidently slipped off the brake, allowing the plaintiff to fall hard onto the deck of the vessel. The jury also found that the vessel was not in any way at fault in causing the accident.

The indemnity clause in *Smith* enabled Tenneco to be indemnified for any claim that "arises out of or is incident to performance" of the charter agreement. The District Court distinguished *Lanasse*, whose indemnity provision only applied to claims "connected with the possession, navigation, management and operation of the vessel." The Fifth Circuit, in reversing the District Court's award of indemnity, stated:

> This is a distinction without a substantial difference. The performance of the charter in the present case involves possession, navigation, management and operation of the vessel. Although it may involve other activities, it does not involve those aspects of operation of the crane on the drilling platform which are independent of the operation of the M/V MARGARET G.... [W]e must hold that his unfortunate collision with the deck did not cause his injury to arise out of or to be incident to the performance of the charter agreement.

*Id.* at 1388–1389.

Trico contends that *Lanasse, Hobbs*, and *Smith* stand for the proposition that an indemnity agreement in a master service contract which pertains to the charter of a vessel does not allow a rig operator to obtain indemnity for its rig based negligence.

In opposition, ODECO argues that the indemnity provision in the case at bar is broader than that found in *Lanasse* or *Hobbs*, since it allows indemnity whenever the accident is incident to or in connection with the activities of Trico. The indemnity clauses in *Lanasse* and *Hobbs*, by their express terms, only provide for indemnity where an accident arises out of the operation or navigation of the vessel. ODECO admits that the indemnity clause in *Smith* is broad, as in the case at bar, but argues that *Smith* is factually distinguishable from the instant case. ODECO notes that the Court in *Smith* did not deny indemnity on the theory that a charter party indemnity agreement does not encompass rig negligence unless it is expressly stated in the agreement. Rather, indemnity was denied because the accident did not "arise out of or [was] incident to the operations" of the charter agreement. *Smith*, 803 F.2d 1388. The "M/V MARGARET G was nothing more than a bystander waiting for the opportunity to perform its task." *Id.* at 1389. Since there was *no negligence* on the part of the vessel operator, the Court did not address whether indemnity can be awarded to the rig owner for its rig negligence where the vessel operator's negligence also contributes to the plaintiff's accident.

The Court finds that the cases cited by Trico do not prohibit indemnification for rig negligence in the case at bar. The plain language of the contract provides that where an accident is "incident to or ... in connection with" the activities of Trico, ODECO may be indemnified to the full extent permitted by the law. The judicial gloss *Lanasse, Hobbs*, and *Smith* add to the scope of the contract does not preclude indemnification. In the aforementioned cases, there was no evidence that the accident was related to the conduct of the crewboat owner. Since the rigs' crane operators were solely at fault, the Courts did not discuss the issue at bar: Whether a rig owner is entitled to be indemnified for its own negligence when the accident is related to the vessel operator's negligence in performing its duties under the contract.

The jury found Trico seventy percent (70%) at fault in causing plaintiff's accident. Thus, Trico's negligence in performing its duties[1] was a substantial cause of Daughdrill's injuries. It is apparent based on the facts presented at trial that the accident in question occurred "incident to, arising out of, in connection with, or resulting from the activities of [Trico]" in performing its duties under the Time Charter. Accordingly, the indemnity agreement will be enforced.

## MAINTENANCE AND CURE

The indemnity clause in the Master Service Contract grants indemnity to ODECO for all claims for damages, including maintenance and cure. ODECO paid plaintiff $70.06 per day for maintenance benefits, totaling $73,072.40, and $48,901.60 for cure expenses. Trico contends that the rate of maintenance ODECO paid Mr. Daughdrill is excessive and suggests a rate of $8.00 per day. Trico also argues that since the jury found Trico seventy percent (70%) at fault in causing plaintiff's accident, Trico should only be required to indemnify ODECO for seventy percent (70%) of plaintiff's cure expenses. *See Adams v. Texaco, Inc.,* 640 F.2d 618 (5th Cir.1981).

The accepted rate of maintenance in this district is $15.00 per day. If it were the policy of ODECO to pay more in maintenance, that was a public relations matter between the employer and the employee, or perhaps, a form of workmen's compensation. Accordingly, the court will award ODECO maintenance at a rate of $15.00 dollars per day. Since plaintiff received maintenance payments for 1043 days, Trico shall pay $15,645.00 on ODECO's claim for maintenance.

The Court will also award ODECO $48,901.60 in cure payments. The contract does not define Trico's responsibility to pay cure according to the percentage of negligence assigned to Trico. The Court is also of the opinion that it is not bound by *Adams,* since ODECO's claim for indemnity for cure payments is based on a contract. *Adams* simply recognized a negligent ship owner's right to contribution or indemnity in tort from a joint tortfeasor whose negligence contributes to plaintiff's injury. In accordance with the language of the contract, the Court will award ODECO the full $48,901.60 in cure payments.

## ATTORNEYS FEES

The court finds that ODECO has adequately explained the nature of the $33,-149.07 in attorneys fees that Trico had labeled as "miscellaneous expenses." However, the Court will deny ODECO's request that it be awarded the full $33,149.07, instead of seventy percent (70%) of same, because ODECO did not file a timely written objection to the Magistrate's findings and recommendation in accordance with 28 U.S.C. § 636(b)(1)(C). Seventy percent (70%) of the $92,809.26 in attorney's fees incurred by ODECO totals $64,966.48. Thus, Trico shall indemnify ODECO for attorney's fees in the amount of $64,966.48.

Accordingly,

IT IS ORDERED that the Magistrate's findings and recommendation of October 25, 1988 are ADOPTED.

IT IS FURTHER ORDERED that judgment be entered on the cross-claim in favor of Ocean Drilling and Exploration Company and against Trico Marine, Inc. in the sum of $150,000.00 (the amount of the payment ODECO made in the settlement with plaintiff), plus $15,645.00 in maintenance payments, plus $48,901.60 in cure payments, plus $64,966.48 in attorneys fees, plus legal interest and all costs.

IT IS FURTHER ORDERED that interest on ODECO's claim for attorneys fees shall accrue from the date each invoice paid. Interest on the remaining items in

---

1. Though neither the Master Service Contract nor the Time Charter state that Trico is responsible for assisting ODECO with disembarkment procedures, this responsibility formed the basis of Daughdrill's claim against Trico, as well as ODECO's defense. Since Trico did not argue at trial that it had no duty to position the M/V AMERICAN RIVER or to assist men off the personnel basket and onto the deck of the M/V AMERICAN RIVER during disembarkment of ODECO personnel, the Court finds that Trico was responsible for those manuevers.

the judgment shall accrue from the date the expenditures were made, calculated on a monthly basis.