Hubbard F. DAUGHDRILL

v.

OCEAN DRILLING AND EXPLORA-
TION COMPANY (ODECO), et al.

Civ. A. No. 85–5559.

United States District Court,
E.D. Louisiana.

March 7, 1989.

Edward Kohnke, IV, and Charles R. Tal-
ley, Lemle, Kelleher, Kohlmeyer, Dennery,
Hunley, Moss & Frilot, New Orleans, La.,
for defendants, ODECO and The D/S
Ocean Explorer.

Thomas Wagner and Michael Bagot,
Wagner & Bagot, New Orleans, La., for
defendant, Trico, Inc.

ORDER & REASONS

MENTZ, District Judge.

Before the Court is the motion of defen-
dant, Trico Marine, Inc., for judgment not-
withstanding the verdict, for reconsidera-
tion, or alternatively, for a new trial. The
Court, after carefully reviewing the memo-
randa submitted by counsel and the appli-
cable law, finds that Trico's arguments are
without merit and denies Trico's motion for
the reasons set forth below.

Trico's motion for judgment notwith-
standing the verdict or, alternatively, for a

new trial is based, in part, on a causation argument. Trico believes that there was insufficient evidence for the jury to conclude that plaintiff's accident was caused by the alleged negligence of Trico's deckhand in failing to guide the personnel basket with a tagline. Trico contends the evidence overwhelmingly demonstrated that plaintiff landed hard on the deck solely because of the fast, free-falling downward movement of the personnel basket.

■ A party cannot move for a judgment notwithstanding the verdict unless it moved for a directed verdict at trial. *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1210 (5th Cir.1985). Since Trico moved for a directed verdict at the close of the evidence at trial, the Court can entertain Trico's motion for judgment notwithstanding the verdict.

The standard for granting a judgment notwithstanding the verdict under F.R.Civ. P. 50(b) is the same as the standard for granting a motion for a directed verdict. *Boeing Company v. Shipman*, 411 F.2d 365, 374 (5th Cir.1969). The Court should consider all the evidence in the light most favorable to the non-moving party and draw all reasonable inferences from the evidence in favor of that party. *Id.* If there is substantial evidence upon which the jury could reasonably find in favor of the non-moving party, the motion should be denied. *Id. See also, Holman v. Mark Industries*, 610 F.Supp. 1195, 1198 (Md. 1985).

A motion for a new trial, on the other hand, may be granted and the verdict set aside when it would be in the interests of justice. F.R.C.P. 59(b), *Holman*, 610 F.Supp. at 1199. As Professor Wright notes, Fed.R.Civ.P. 59(a) "gives the trial judge ample power to prevent what he considers to be a miscarriage of justice. It is his right, and indeed his duty, to order a new trial if he deems it in the interests of justice to do so." 11 C. Wright & A. Miller, Federal Practice and Procedure § 2803 (1973). Relief in the form of a new trial is within the sound discretion of the trial court. The burden of showing error rests on the party seeking the new trial. *Holman*, 610 F.Supp. at 1199.

■ The Court is of the opinion that the jury's allocation of negligence is supported by substantial evidence and does not constitute a miscarriage of justice. Substantial evidence of negligence was presented against both ODECO and Trico. There was ample evidence for the jury to conclude that Trico's negligence in failing to grab the tag line contributed to plaintiff's injury. Accordingly, Trico's motion for judgment notwithstanding the verdict or for a new trial on the issue of causation will be denied.

■ Trico also argues that this Court erroneously directed a verdict in favor of defendant, ODECO Oil & Gas Company, and that a new trial should be had to allow a jury to determine whether this defendant was negligent. The Court respectfully disagrees with this contention. Counsel for ODECO Oil & Gas Company moved for a directed verdict on the ground that insufficient evidence existed for the issue of the negligence of ODECO Oil & Gas Company to go to the jury. Plaintiff's negligence claim against ODECO Oil & Gas under general maritime law was based on the failure of its personnel to delay the crewboat transfer or direct that transfer occur by other means, such as by helicopter.

Mr. Daughdrill testified that, as lead toolpusher, he had the responsibility to decide the method used to conduct the crew transfer. When asked whether he could request a helicopter if the weather was too rough to execute the crew exchange by personnel basket, Touchet replied: "I would have to talk it over with the Company man and then he would have to call.... I would go to the company man and talk it over with him." *See* trial transcript of Mr. Daughdrill, p. 87. No testimony was elicited at trial to establish that the ODECO Oil & Gas Company man on the rig was responsible for assessing the weather conditions to determine if the personnel transfer could be performed safely by means of a crew boat. Even if this responsibility could be inferred from Daughdrill's testimony, there was no evidence that the company

man was negligent in failing to order a helicopter for the crew change. It is significant to the Court that the ODECO Oil & Gas Company man was not even called to testify at trial. If Trico believed that ODE-CO Oil & Gas Company was culpable, it should have called the appropriate witnesses and introduced the appropriate evidence. Because there was no evidence of negligence on the part of this defendant, the Court properly directed a verdict in its favor.

Trico's final assignment of error in its motion for a new trial is that this Court erred in granting a directed verdict in favor of ODECO on plaintiff's claim that the D/B OCEAN EXPLORER was unseaworthy. Trico contends that the OCEAN EXPLORER was unseaworthy because ODECO failed to provide its crew with a policy on how to perform crew transfers in rough seas and because ODECO's crane operator, Mr. Touchet, was not competent to handle personnel transfers safely.

■ The negligence of a crane operator in loading or unloading personnel can create a "condition" that will render the vessel unseaworthy. *Cf. Campbell v. Seacoast Products*, 581 F.2d 98 (5th Cir.1978) (negligence of winch operator can render vessel unseaworthy); *Usner v. Luckenbach Overseas Corp.*, 400 U.S. 494, 91 S.Ct. 514, 27 L.Ed.2d 562 (1971) and *Robinson v. Showa Kaiun K.K.*, 451 F.2d 688 (5th Cir.1971) (negligence of longshoreman in loading or unloading cargo can render vessel unseaworthy). The reason for this is that

"unseaworthiness is a *condition,* and how that condition came into being—whether by negligence or otherwise—is quite irrelevant to the owner's liability for personal injuries resulting from it. . . .

Her gear might be defective, her appurtenances in disrepair, her crew unfit. The number of men assigned to perform a shipboard task might be insufficient.

The method of loading her cargo, or the manner of its stowage, might be improper. For any of these reasons, or others, a vessel might not be reasonably fit for her intended service."

*Usner,* 400 U.S. at 498–499, 91 S.Ct. at 517–518. However, a vessel is not deemed unseaworthy because of an isolated personal negligent act of the crew, for that would destroy the distinction between unseaworthiness and negligence. *Id.,* 400 U.S. at 500, 91 S.Ct. at 518. The Fifth Circuit has interpreted *Usner* to mean that only "a congeries of acts might create a 'condition' of unseaworthiness, so that an individual act of negligence within or after the congeries might give rise to liability under the unseaworthiness doctrine." *Robinson,* 451 F.2d at 690.

■ The alleged negligence of ODECO's crane operator, when evaluated in this light, is not pervasive enough to constitute unseaworthiness. The evidence at trial reflected that plaintiff was lowered hard onto the deck of the crewboat at the time of the accident and, perhaps on one or two occasions prior to that during the past ten years. However, plaintiff was unable to determine whether Mr. Touchet was the crane operator on the prior incidents and also admitted that Mr. Touchet was a good crane operator. Construing these facts in a light most favorable to Trico, they represent isolated acts of negligence, insufficient to render the vessel unseaworthy. Accordingly, the Court will not reverse the directed verdict in favor of ODECO on the unseaworthiness issue based on the negligence of the crane operator.

■ Trico also contends that ODECO's failure to provide their crew with a policy regarding personnel transfers rendered the vessel unseaworthy. The Court notes that this issue was not clearly raised as a basis for unseaworthiness in the pre-trial order.[1]

---

**1.** The pre-trial order set forth the following contested issues of law on the seaworthiness issue: 1) Whether the D/S OCEAN EXPLORER was rendered unseaworthy by the failure to provide a safe means of ingress to and from the rig and the M/V AMERICAN RIVER; 2) Whether the

D/S OCEAN EXPLORER was rendered unseaworthy by using a personnel basket with a crane with a free falling block to transfer personnel under the circumstances present at the time of Mr. Daughdrill's accident.

Nevertheless, the Court will consider the merits of Trico's argument.

At trial, Ray Powell, ODECO's drilling superintendent, testified that ODECO did not have a policy on how to determine whether personnel transfer should be conducted by crewboat or helicopter. However, there was no evidence establishing that the absence of an express policy created an unseaworthy condition. On the day of Daughdrill's accident, the seas were six to eight feet in height and the winds were thirty to thirty-two miles an hour. Ray Powell simply testified that it is the practice of ODECO's toolpushers not to discharge by crane in wind speeds over forty-five miles an hour and that the decision to off-load by crane in less than ten foot seas depends upon how well the captain of the crewboat controls his boat and whether the sea has choppy waves or ground swells. Powell's testimony merely showed that, within certain guidelines customarily applied by the company's men, the method employed to perform the crew transfer is made on a case by case basis. If Trico intended to pursue this unseaworthiness defense, it could, for example, have called a safety expert to testify that the lack of a company policy rendered the crew unfit. In addition, there was no evidence at trial of repeated injuries to crew members resulting from personnel transfers by crane and crewboat, as would be necessary for an absence of policy to constitute an unseaworthy condition. *See e.g., Usner,* 400 U.S. at 498–499, 91 S.Ct. at 517–518. Because of the complete lack of evidence that the D/B OCEAN EXPLORER was unseaworthy, the directed verdict in ODECO's favor was proper.

Finally, Trico moves this Court to reconsider its ruling on the indemnity issue. By way of Order and Reasons dated December 30, 1988, 702 F.Supp. 1267, the Court issued extensive written reasons for its ruling that ODECO was entitled to be indemnified for its own negligence from Trico. The issue has been well briefed by the parties and Trico's motion alleges no new facts or legal arguments to warrant reconsideration.

Accordingly,

IT IS ORDERED that Trico's motion for judgment notwithstanding the verdict, for reconsideration, or, alternatively, for a new trial is DENIED.