985 F.2d 553
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
CHICAGO TITLE INSURANCE COMPANY, Plaintiff-Appellee,
v.
IMG EXETER ASSOCIATES LIMITED PARTNERSHIP; Douglas A. Nyce;
Janette L. Nyce; John M. Dempsey; Frances T.
Dempsey; Robert E. Grove, Jr.; Hope E.
Grove, Defendants-Appellants.
 No. 92-1440.
 United States Court of Appeals,
Fourth Circuit.
 Submitted: January 20, 1993
Decided: February 8, 1993
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Albert V. Bryan, Jr., Senior District Judge. (CA-91-1526-A)
 Pamela Anne Bresnahan, Robert W. Hesselbacher, Jr., SEMMES, BOWER & SEMMES, Washington, D. C., for Appellants.
 tJames Bruce Davis, J. Carlton Howard, Jr., Charles E. Curran, BEAN, KINNEY & KORMAN, P.C., Arlington, Virginia, for Appellee.
 E.D.Va.
 AFFIRMED.
 Before ERVIN, Chief Judge, and PHILLIPS and MURNAGHAN, Circuit Judges.
 PER CURIAM:
 
 OPINION
 
 1
 Appellants[1] appeal from the district court's judgment in favor of Plaintiff Chicago Title Insurance Company ("CTIC") on a claim for breach of an indemnity agreement. Defendants contend that the district court committed numerous prejudicial errors in the one-day bench trial, including the application of the wrong standard of proof, the admission of legal conclusion testimony from CTIC's expert witness, and the misinterpretation of the Indemnity Agreement at issue. We find that the district court's findings of fact and conclusions of law are reasonable, supported by the record, and correct. We therefore affirm the district court's judgment.[2]
 
 I.
 
 2
 In December 1985, the IMG/Exeter Associates Limited Partnership (the "Partnership"), along with retained general contractor Pulte Home Corporation ("Pulte"), undertook the construction of an apartment complex in Leesburg, Virginia (the "Project"). To secure its financing with Sovran Bank ("Sovran"), the Partnership placed an insured deed of trust on the Project in favor of Sovran. The title insurance policy, which included affirmative insurance against mechanics liens, was issued to the Partnership by CTIC upon the Partnership's satisfaction of two requirements. First, the Partnership, general partners John Dempsey, Douglas Nyce, and Robert Grove (the "General Partners"), and their respective spouses had to execute an agreement to indemnify CTIC against any liability under the policy. Second, the General Partners had to provide personal financial statements to CTIC.
 
 
 3
 The Indemnity Agreement was executed by the Partnership and the individual Defendants on December 17 and 23, 1985, respectively.[3] In pertinent part, the Agreement reads:
 
 
 4
 [T]he undersigned parties (hereinafter referred to as PRINCIPALS), jointly and severally, covenant, and agree with the Company [i.e., CTIC] to forever fully protect, defend and save harmless the Company from and against the above mentioned rights, liens, claims or encumbrances[i.e., mechanic's liens] and each and every of them, and against all loss, costs, damages and attorney's fees and expenses of every kind and nature which the Company may suffer, expend or incur under or by reason, or in consequence of, the issuance of the said Commitment and Policy, or subsequent commitments and policies, in the aforestated manner, including loss, costs, damages, fees and expenses incurred in actions brought to enforce this agreement.
 
 
 5
 IT IS understood and agreed that in the event lien claims are filed due to disputes between the owner, any general contractors, subcontractors, etc., then in that event, the undersigned, either jointly or severally, will either, (a) immediately take appropriate action to file a bond in the Circuit Court of Loudoun County, Virginia, which bond will have the effect of removing the lien claim(s) from the land and attaching said lien claim(s) to the bond, all in accordance with the Virginia Code, or (b) establish a cash escrow with the Company in an amount sufficient to pay the lien claim(s) plus interest and costs, and attorneys' fees incurred in defense of the lien claim(s) and giving the Company the right to pay and discharge said lien claim(s) in the event same should subsequently be perfected by suit and constitute a judgment(s) with priority over the insured deed of trust or deeds of trust.
 
 
 6
 ....
 
 
 7
 IN WITNESS WHEREOF, this instrument has been executed this 17th day of December, 1985, on behalf of IMG/Exeter Associates Limited Partnership, a Virginia limited partnership.
 
 
 8
 (SEAL)
 
 
 9
 (SEAL)
 
 FOR USE BY CORPORATIONS OR PARTNERSHIPS:
 
 10
 IMG/Exeter Associates Limited Partnership Name of Corporation or Partnership
 
 
 11
 BY: /s/ John M. Dempsey(SEAL) TITLE: General Partner
 
 
 12
 [authorization, dated December 17, 1985, by notary]
 
 
 13
 WITNESS the following signatures as of the day and year above written. 1.a./ s/ Douglas A. Nyce Douglas A. Nyce [Address]
 
 
 14
 b./s/ Janette L. Nyce Janette L. Nyce [Address]
 
 
 15
 2.a./s/ John M. Dempsey John M. Dempsey [Address]
 
 
 16
 b./s/ Frances T. Dempsey Frances T. Dempsey [Address]
 
 
 17
 3.a./s/ Robert E. Grove, Jr. Robert E. Grove, Jr. [Address]
 
 
 18
 b./s/ Hope E. Grove Hope E. Grove [Address]
 
 
 19
 [authorization, dated December 23, 1985, by notary]
 
 
 20
 WITNESS the following signatures as of the day and year above written.
 
 
 21
 4.a./s/ D. F. Antonelli, Jr. D. F. Antonelli, Jr. [Address]
 
 
 22
 b./s/ Judith D. Antonelli Judith D. Antonelli [Address]
 
 
 23
 [authorization, dated December 23, 1985, by notary]
 
 
 24
 Joint Appendix ("J.A.") at 177-81 (emphasis in original).
 
 
 25
 In late 1988, a dispute arose between the Partnership and Pulte over the Partnership's nonpayment of final development expenses. Because of numerous delays and contractual violations by Pulte, the Partnership felt that it had suffered damages in the amount of $3,000,000, which could be successfully asserted as a counterclaim against any claim for payment pressed by Pulte. The inability of the Partnership and Pulte to resolve this disagreement prompted Pulte to file a Memorandum of Mechanics Lien in Loudoun County, Virginia, on January 25, 1989, seeking $700,317. On April 27, 1989, Pulte filed a Bill of Complaint to enforce its lien (the "Loudoun County Litigation" or "Litigation").
 
 
 26
 Six days before the Loudoun County Litigation was to go to trial, Defendants and Pulte entered into a Memorandum of Agreement. The Memorandum consented to an entry of judgment against the Partnership in the amount of $600,000. The Memorandum also waived the $3,000,000 counterclaim, the Partnership's most viable defense.[4] In return, the General Partners were released from any personal liability under the construction contract. The issue of Pulte's entitlement to a mechanics lien was left open for trial in the Litigation. If it prevailed, Pulte would have received a $600,000 mechanics lien with priority over Sovran's deed of trust, for which CTIC would be responsible. If the Partnership prevailed, Pulte's $600,000 judgment would be subordinated to Sovran's deed of trust and, therefore, not covered by the title insurance policy issued by CTIC.
 
 
 27
 Although it received a draft copy of the Memorandum before its execution by Pulte and the Partnership, CTIC refused to consent to the terms of the Memorandum. After learning, within twenty-four hours of its refusal to consent, that the Memorandum had been executed, CTIC determined that settlement of the Loudoun County Litigation was in its best interest. Negotiations resulted in a settlement whereby CTIC paid Pulte $400,000 in exchange for a release of the mechanics lien and a dismissal of the remainder of the Litigation. CTIC neither consulted with nor sought permission from the Partnership before settling the Litigation.
 
 
 28
 Based on its finding that CTIC's settlement of the Litigation was reasonable and could be recovered despite the absence of a judgment, the district court entered judgment for CTIC. The court also ruled that the individual Defendants were personally liable as indemnitors and guarantors under the Indemnity Agreement.
 
 II.
 A.
 
 29
 Because it received neither notice of nor an opportunity to approve the settlement between CTIC and Pulte, the Partnership contends that CTIC's burden in this case is to prove actual liability to Pulte in the Loudoun County Litigation. However, the district court awarded judgment to CTIC on a finding that CTIC was potentially liable to Pulte.
 
 
 30
 The application of the correct legal standard is a question of law subject to de novo review on appeal. See Atlantic Richfield Co. v. Interstate Oil Transp. Co., 784 F.2d 106, 110-13 (2d Cir.), cert. denied, 479 U.S. 817 (1986). Proof of actual liability is required where the indemnitee does not notify the indemnitor of a potential settlement of the underlying litigation, thereby depriving the indemnitor of an opportunity to approve the settlement, participate in the settlement negotiations, or assume the defense of the claims. Atlantic Richfield Co., 784 F.2d at 113.
 
 
 31
 The general rule requires an indemnitee to show actual liability on his part to recover against an indemnitor, but we have held that a defendant need only show potential (rather than actual) liability to recover indemnity where either (1) the defendant tenders the defense of the action to the indemnitor; (2) the claim for indemnity is founded upon a judgment; [or] (3) the defendant's claim is based on a written contract of insurance or indemnification.
 
 
 32
 Fontenot v. Mesa Petroleum Co., 791 F.2d 1207, 1216-17 (5th Cir. 1986) (footnote omitted); see also Tankrederiet Gefion A/S v. HymanMichaels Co., 406 F.2d 1039, 1043 (6th Cir. 1969). The amount of the settlement must also be reasonable. Fontenot, 791 F.2d at 1217 n.12.
 
 
 33
 In this case, Defendants received the requisite notice. "Notice sufficient to give the indemnitor a meaningful opportunity to defend is the indispensable element to be proven by the party seeking indemnity."[5] Atlantic Richfield Co., 784 F.2d at 113. Once Pulte filed its Memorandum of Mechanics Lien, Defendants had actual notice of the pending claims. Defendants immediately undertook and controlled the defense and partial settlement of those claims for two years. Ultimately, Defendants waived their opportunity to defend in exchange for individual immunity for the General Partners. To hold otherwise would ignore the facts of this case. Moreover, such a holding would inequitably benefit the party responsible for both the attachment of the mechanics lien and the compromise of CTIC's defense against that lien.
 
 
 34
 Furthermore, since December 1985, the Partnership was bound by a written contract of indemnification, the validity of which is not contested in this appeal.
 
 
 35
 [T]he courts should be wary of imposing additional requirements on the parties' legitimate contractual bargain. The requirement that the indemnitee rigorously establish its potential liability to recover from the indemnitor may serve a valuable function when there is no contractual relationship between the parties, but the existence of a valid indemnity agreement should ease the indemnitee's burden. A court confronted with such an agreement should insure that the claim was not frivolous, that the settlement was reasonable, that it was untainted by fraud or collusion, and that the indemnitee settled under a reasonable apprehension of liability. But to require the indemnitee to go farther and establish with certainty its actual liability is to rewrite the parties' indemnity agreement.
 
 
 36
 Fontenot, 791 F.2d at 1217-18 (footnote omitted). Defendants have not contended that the Loudoun County Litigation was frivolous or that the settlement thereof resulted from fraud or collusion. In addition to finding that CTIC was not required to obtain Defendants' consent before settling the Litigation, the district court determined that the settlement was reasonable and based upon a reasonable apprehension of liability. As these findings of fact are not clearly erroneous, it follows that the actual notice received by Defendants and the existence of a valid Indemnity Agreement required proof of potential, rather than actual, liability for recovery of indemnification. Atlantic Richfield Co., 784 F.2d at 112. Hence, the district court applied the appropriate standard of proof in this case.
 
 B.
 
 37
 According to Defendants, the court erred in allowing CTIC's expert witness, mechanics lien litigator Richard Henning, to state legal opinions and conclusions concerning Pulte's likelihood of success in the Loudoun County Litigation and the reasonableness of CTIC's settlement of the Litigation. Evidentiary rulings are reviewed for an abuse of discretion. Northern Heel Corp. v. Compo Indus, Inc., 851 F.2d 456, 468 (1st Cir. 1988).
 
 
 38
 In a jury trial, because of the potential usurpation of the court's responsibility to state the meaning and applicability of the appropriate law and the jury's task to apply the appropriate law to the facts of the case, legal conclusions by an expert witness are inadmissible.
 
 
 39
 Adalman v. Baker, Watts & Co., 807 F.2d 359, 366-68 (4th Cir. 1986). However, these concerns are not present in a bench trial where the district court, as the trier of fact, is free to accept or reject the expert's testimony. See id. at 366. In this case, the court expressly disavowed reliance on Henning's testimony as to Pulte's likelihood of success.
 
 
 40
 Assuming arguendo that the district court abused its discretion in admitting Henning's testimony,[6] a judge presiding over a bench trial is presumed to consider only relevant, admissible evidence. See, e.g., United States v. Smith, 390 F.2d 420, 422 n.2 (4th Cir. 1968); Charles A. Wright & Kenneth W. Graham, Federal Practice and Procedure § 5012, at 119 & n.12 (1977 & Supp. 1992). Defendants have failed to demonstrate that a substantial right was affected by the court's evidentiary ruling. Fed. R. Evid. 103(a). The admission of the proffered expert opinions, if indeed erroneous, was harmless.
 
 C.
 
 41
 Finally, Defendants contend that the court misconstrued the provisions of the Indemnity Agreement. Specifically, Defendants argue that clause (b) of the Agreement, as quoted supra, preconditions the attachment of any duty of indemnification on the entry of a judgment on a mechanics lien. Defendants also contend that the General Partners and their spouses signed the Agreement either as general partners authorizing the Partnership to enter into the Agreement or as witnesses to the signature of John Dempsey on behalf of the Partnership, rather than as indemnitors and guarantors. However, the plain, unambiguous language of the Agreement belies these contentions.
 
 
 42
 The interpretation of an indemnity contract is a question of law subject to a de novo review. Smith v. Tenneco Oil Co., 803 F.2d 1386, 1388 (5th Cir. 1986). To determine the intended scope of the Indemnity Agreement, "contract provisions should be given their natural and most commonly understood meaning in light of the subject matter and circumstances, and the language should be read in common with the other provisions of the contract." Bankatlantic v. Blythe Eastman Paine Webber, Inc., 955 F.2d 1467, 1477 (11th Cir. 1992) (quoting Gibbs v. Air Canada, 810 F.2d 1529, 1532 (11th Cir. 1987)), cert. denied, 61 U.S.L.W. 3477 (U.S. 1993). The Indemnity Agreement does not require entry of judgment before the indemnity obligation attaches. Because Defendants never filed the bond or cash escrow required by the Agreement upon the filing of a mechanics lien, the "judgment" language in clause (b) did not come into effect. To require CTIC to obtain a judgment before seeking indemnity from Defendants would add a requirement not contemplated by the plain language of the Indemnity Agreement and vitiate Defendants' contractual obligation to protect CTIC from the adverse effects of any mechanics lien by indemnifying CTIC for "all loss, costs, damages and attorney's fees and expenses of every kind and nature which [CTIC] may suffer, expend or incur under or by reason, or in consequence of, the issuance of the said Commitment and Policy." J.A. at 177. So long as CTIC's settlement of the Loudoun County Litigation was reasonable and undertaken in good faith, Defendants' duty to indemnify attached when CTIC incurred a loss and costs by settling the pending mechanics lien. See Bainville v. Hess Oil V.I. Corp., 837 F.2d 128, 130-31 (3d Cir. 1988); U.S. Indus., Inc. v. Blake Constr. Co., 671 F.2d 539, 551-52 (D.C. Cir. 1982).
 
 
 43
 The plain language of the Agreement also supports the court's finding that the individual Defendants were obligated under the Indemnity Agreement as indemnitors and guarantors. Various passages within the Agreement, including the careful distinction between the Partnership, identified as the "Borrower," and "the undersigned parties (hereinafter referred to as PRINCIPALS)," and the Principals' "jointly and severally" contracting with CTIC, belie Defendants' contention that the Partnership was the sole entity responsible under the Agreement. J.A. at 176-77. The presence of signatures by persons other than the General Partners negates Defendants' position that the signers were partners consenting to the Partnership's entry into the Agreement. Alternatively, if the signers intended merely to witness the Agreement, there is no explanation why the identical contractual language imposes liability on the Partnership but not on the individual Defendants or Mr. and Mrs. Antonelli, why so many witnesses were necessary, why the signatures needed to be notarized, why a representative of CTIC could not or did not witness the document, or why the signatures were added to the Agreement six days after John Dempsey signed on behalf of the Partnership. Even the two General Partners who testified, Grove and Dempsey, could not avow to their intent in signing the Agreement. J.A. at 87-88, 100.
 
 
 44
 If indeed there are two permissible views of the intended scope of the Indemnity Agreement and the individual Defendants' liability thereunder, the district court's choice between those views cannot be clearly erroneous. See Anderson v. Bessemer City, 470 U.S. 564, 574 (1985); Babb v. Olney Paint Co., 764 F.2d 240, 243 (4th Cir. 1985). We cannot say, based on the record and our own reading of the Indemnity Agreement, that the district court misconstrued the provisions of the parties' Agreement.
 
 III.
 
 45
 For the foregoing reasons, we find Defendants' contentions to be meritless. Accordingly, the district court's judgment is hereby affirmed. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid the decisional process.
 
 AFFIRMED
 
 
 [1]
 This appeal is prosecuted solely on behalf of Douglas and Janette Nyce, because the remaining individual Defendants have filed for bankruptcy. For purposes of this Opinion, we shall collectively refer to Appellants and their business associates as "Defendants."
 
 
 [2]
 We reject CTIC's arguments that this Court lacks appellate jurisdiction in this case. Defendants' notice of appeal was not rendered invalid under Fed. R. App. P. 4(a)(4) by the district court's subsequent ruling on CTIC's application for attorney fees. A post-judgment application for fees is not a Fed. R. Civ. P. 59(e) motion to alter or amend judgment. White v. New Hampshire Dep't of Employment Sec., 455 U.S. 445 (1982); Hicks v. Southern Md. Health Sys. Agency, 805 F.2d 1165, 1166 (4th Cir. 1986). Furthermore, "a decision on the merits is a 'final decision' for purposes of [28 U.S.C.] § 1291 whether or not there remains for adjudication a request for attorney's fees attributable to the case." Budinich v. Becton Dickinson & Co., 486 U.S. 196, 202-03 (1988)
 Also, Defendants did not waive their objections to the legal conclusion proffered by CTIC's expert witness, despite their failure to state the grounds for their objections, because the specific grounds for the objections were apparent from the context of the questioning. Fed. R. Evid. 103(a)(1).
 
 
 [3]
 D. F. and Judith Antonelli also executed the Agreement on December 23. D. F. Antonelli was the Partnership's limited partner
 
 
 [4]
 Upon waiver of the counterclaim, only two defenses remained available to the Partnership: (1) the Memorandum of Mechanics Lien was filed by the wrong party, and (2) was not filed within the time required by the Virginia Code. The first defense had already been considered and rejected by the state court judge. The second defense was characterized by the district court as "arguable" and "risky."
 5[W]here an indemnitor is notified and can take part in-indeed may control-the litigation, he is precluded from contesting the indemnitee's liability in the subsequent indemnity action. The indemnitor's knowing failure to participate is deemed a consent to representation by the indemnitee, thus forming the predicate for application of the rule that a litigant is entitled only once to his day in court.... [N]otice and an opportunity to defend are the indispensable due process satisfying elements.
 Jennings v. United States, 374 F.2d 983, 986 (4th Cir. 1967); see also Atlantic Richfield Co., 784 F.2d at 111 (" Jennings has been construed to mean that the opportunity to defend element may be satisfied by notice that an action against the indemnitee has been initiated.") (citing Burke v. Ripp, 619 F.2d 354, 358 (5th Cir. 1980)).
 
 
 [6]
 "[A] trial judge has wide discretion in the admission or exclusion of opinion evidence. This discretion, expansive in all events, is at maximum girth in the context of a bench trial." Northern Heel Corp., 851 F.2d at 468 (citations omitted)
 The Eleventh Circuit has held that, in a jury trial of an indemnity action, expert testimony pertaining to the reasonableness of the claim's settlement and the underlying motivation for that settlement is admissible. GAB Business Servs., Inc. v. Syndicate 627, 809 F.2d 755, 761-62 (11th Cir. 1987) ("Depending upon whether there was adequate notice to [the indemnitor, the indemnitee's] burden was to prove actual or potential liability to [the lienholder]. In either case, expert testimony and other evidence relating to the strength of [the lienholder's] claim was not only relevant, but absolutely essential.").